933 So.2d 817 (2006)
Jeff LAZARO
v.
NEW ORLEANS BRASS (Employer), Louisiana Insurance Guaranty Association and Gab Robins Risk Management Services, Inc.
No. 2005-CA-0591.
Court of Appeal of Louisiana, Fourth Circuit.
May 26, 2006.
*819 Robert L. Hackett, The Hackett Law Firm, Atlanta, GA, for Plaintiff/Appellant.
Diana L. Tonagel, Mandeville, LA, for Defendant/Appellee.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS SR., and Judge EDWIN A. LOMBARD).
CHARLES R. JONES, Judge.
This present matter arises out of a suit for disability payments. The Appellant, Jeff Lazaro, appeals the judgment of the Office of Workers' Compensation, which denied acceleration of his benefit payments and statutory attorneys' fees. WE AFFIRM.

FACTS AND PROCEDURAL HISTORY
Mr. Lazaro was a professional hockey player for The New Orleans Brass[1] (hereinafter the "NOB"). On or about January 3, 2002, Mr. Lazaro suffered an injury during a hockey game. Mr. Lazaro later filed a claim under the Louisiana Workers' Compensation Act, L.S.A. 23:1021, et seq.
However, once Mr. Lazaro's eligibility for Supplemental Earnings Benefits (hereinafter "SEB") was determined,[2] he alleges that the NOB and its insurer failed to forward payments. Mr. Lazaro subsequently filed a Motion to Accelerate Payments of Supplemental Earnings Benefits with the Office of Workers' Compensation (hereinafter the "OWC") on December 9, 2003. In his Motion, Mr. Lazaro averred *820 that the case on the merits concerning his eligibility for benefits resulted in a final judgment, signed on September 26, 2003. The Motion incorporates the provisions of the same judgment, which specifically awarded Mr. Lazaro SEBs, payable to him by the NOB from February 2, 2003, forward. The judgment further instructed Mr. Lazaro to provide earnings information to the NOB and its Workers' Compensation carrier/insurer, Villanova Insurance Company (hereinafter "Villanova"), from February 2, 2003, forward. The judgment also indicated that Mr. Lazaro carried his burden of proof that he was permanently disabled and unable to return to his job as a hockey player as of February 8, 2003, and that he was unable to earn at least 90% of his former wages as a hockey player.
Mr. Lazaro's Motion also indicated that the judgment became final for purposes of execution on October 26, 2003. Around this time, both parties filed devolutive appeals.
Nevertheless, Mr. Lazaro averred that he made several demands for payment of the SEBs from the NOB and its insurer, Villanova, but he indicated that the NOB and Villanova instead demanded that certain "1020 Forms"[3] be submitted to them prior to paying the SEBs. Correspondence is contained in the record which reflects that the NOB would not forward payment to Mr. Lazaro because the "1020 Forms" were needed to make unspecified deductions from the payments before forwarding any monies to Mr. Lazaro.
However, Mr. Lazaro's Motion argued that the "1020 Form" provides that the Claimant would not have any responsibility to file the form unless and until the employer pays benefits in accordance with the law. Hence, Mr. Lazaro argues that the NOB's failure to tender payment is a default which gives him the right to accelerate payment in accordance with La. R.S. 23:1333.[4] He also alleged that such a failure to pay on the part of the NOB, through their insurer, was a "willful refusal" to pay.
The NOB subsequently filed a Motion to Reduce Benefits for Failure to Cooperate with Vocational Rehabilitation on December 10, 2003. In the Motion, the NOB alleged that Mr. Lazaro had been uncooperative in scheduling vocational rehabilitation with the vocational rehabilitation counselor, Ms. Dawn Ferriday. However, the Motion also indicated that Mr. Lazaro's counsel allegedly informed the NOB that Mr. Lazaro was happy with his new job "selling insurance" and "was not willing to undergo vocational rehabilitation." The NOB argued, therefore, that pursuant to L.A. R.S. 23:1226(E)[5], that Mr. Lazaro's benefits were subject to reduction.
*821 On December 23, 2003, the NOB filed a Motion to Stay All Office of Workers' Compensation Proceedings and Appeal, on the basis that Mr. Lazaro did not file the "1020 Forms," as he was required by the OWC judgment of September 26, 2003. The NOB indicated that upon receipt of the forms from Mr. Lazaro, it forwarded same to the adjuster at GAB Robins Risk Management, (hereinafter "GAB") the third-party administrator of Villanova. However, around the same time, the NOB was notified that their Workers' Compensation carrier at the time of Mr. Lazaro's accident, Villanova, had been ordered into liquidation. As a result of the liquidation order, Villanova had been declared defunct as of July 25, 2003.
On December 23, 2003, Mr. Lazaro in turn filed a Declinatory Exception of Lack of Jurisdiction Relative to Employer's Motion to Reduce Benefits for Failure to Cooperate with Vocational Rehabilitation. In the Exception, Mr. Lazaro argued that the court had been divested of jurisdiction in the matter as set forth by Articles 925[6] and 2088[7] of the Louisiana Code of Civil Procedure. Additionally, Mr. Lazaro also filed a Motion for Summary Judgment on the same date. In his Motion, he alleged that there were "no questions of material fact relative to his demand for acceleration of Supplemental Earnings Benefit payments" as the NOB failed to make payments to him for over ten (10) months, and the payments were now subject to statutory acceleration. Attached to the Motion is an affidavit in which Mr. Lazaro attested to the fact that he submitted "all of his earnings records for all amounts earned since his career ending injury which occurred in January, 2002." He further indicated that his earnings records were complete *822 and that figures represented by the individual check stubs showing the amount of the individual checks were true and correct, and represented "gross amounts actually paid to Claimant since he was last paid salary by his employer through March, 2002."
On the same date, Mr. Lazaro also filed his Opposition to Motion to Reduce Benefits for Failure to Cooperate with Vocation Rehabilitation. The Motion claimed in part that Mr. Lazaro had in fact contacted the NOB's contract rehabilitation counselor, Cindy A. Harris, of Medinsight's Inc., and that he believed that the NOB was merely delaying its obligation to pay the benefits through its Motion to Reduce Benefits.
The NOB filed a Memorandum in Opposition to Claimant's Motion to Accelerate Payments of Supplemental Earnings Benefits on April 23, 2004. The motion claimed in part that Mr. Lazaro's Motion to Accelerate Payments incorrectly represented that the NOB and their Insurer failed to pay benefits. The NOB pointed out that Mr. Lazaro never named the NOB's insurer as a party defendant, and that the subject judgment, which awarded the SEB payments, was rendered solely against the NOB. The NOB further indicated that although they did not suspensively appeal the judgment, Mr. Lazaro's Motion to Accelerate Payments incorrectly states that the "Employer/Insurer" chose not to appeal. Again, the insurer was not named as a party.
The NOB's memorandum further indicated that although Mr. Lazaro had the legal right to proceed against its insurer, Villanova had been placed into receivership/liquidation by order entered on July 25, 2003.
Finally, the memorandum also indicated that the judgment which granted Mr. Lazaro's SEBs did not set a fixed amount because of the failure of Mr. Lazaro to provide needed information. The NOB pointed out the OWC did recognize that Mr. Lazaro's wage information needed to be provided to the NOB "from February 8, 2003 forward" and that "such information is required to be submitted on Form 1020. . . ." However, the NOB indicated that Mr. Lazaro had not submitted his wage information as required, and as a result of this failure, Mr. Lazaro had not met his burden of proving that the NOB's refusal to pay the SEBs was not a "willful refusal."
By an Order dated January 7, 2004, the OWC, stayed the case for sixty (60) days due to the instigation of liquidation proceedings involving Villanova Insurance. Mr. Lazaro subsequently filed a Motion and Order to Reinstate Claim to Trial Docket on March 11, 2004, after the sixty (60) days expired. The matter was returned to the active OWC trial docket on March 17, 2004.
Another Order was signed by the OWC on April 29, 2004, that transferred all post-trial issues from the OWC case number 02-04545, to a new case number, 04-03553, since the post-judgment matters were filed on or after December 9, 2003.
Mr. Lazaro subsequently filed a Petition on May 20, 2004 in which he named the Louisiana Insurance Guaranty Association (hereinafter "LIGA") and GAB, the third party administrator, as defendants. In the Petition, Mr. Lazaro alleged that GAB "failed to provide the services, duties, and requirements as set forth by State law at La. R.S. 22:3031, et. seq . . ." and that LIGA, by statutory mandate, is obligated to provide coverage in the case of a liquidated insurer.
LIGA answered the Petition and denied all of the allegations contained in Mr. Lazaro's Petition. Specifically, LIGA responded *823 that Mr. Lazaro failed to properly provide a notice of claim, and that he failed to satisfy the statutory requirements regarding notice of execution of judgment. As to medical payments, LIGA also denied that it was responsible for Mr. Lazaro's medical payments in excess of $750.00, because the treatment he obtained was received without prior approval from the NOB. LIGA also averred an affirmative defense with respect to the "coverage" that Mr. Lazaro argued was statutorily mandated, and LIGA also averred an affirmative defense with respect to Mr. Lazaro's entitlement to workers' compensation benefits, or private disability benefits funded by the NOB. Finally, LIGA averred an affirmative defense with respect to Mr. Lazaro's entitlement to benefits and further claimed that he "engaged in conduct in violation of Section 1208 of the Louisiana Workers' Compensation Act thereby forfeiting his entitlement to any benefits he may have otherwise been entitled to under the Louisiana Workers' Compensation Act."
In response to Mr. Lazaro's Petition, GAB filed an Exception of No Cause of Action on the grounds that the Louisiana Workers' Compensation Act "does not afford a cause or right of action against third-party administrators by worker's compensation claimants."
On June 15, 2004, some months after Mr. Lazaro filed the Motion to Accelerate Payments, LIGA paid him the sum of $10,021.53, which represented the Supplemental Earnings Benefits for the time period specified by the September 26, 2003 judgment.
Mr. Lazaro then filed his First Supplemental and Amending Petition on June 27, 2004, in which he averred his status as a "third party beneficiary" pursuant to a contract which existed between GAB, as third-party administrator, and Villanova Insurance Company. Additionally, he claimed that he was denied notice as required by Title 23 and R.S. 22:3031, et seq., and as a result had suffered lengthy delays in payment of his workers' compensation benefits. Mr. Lazaro also pointed out that his claim was impeded due to the fact that all of the adverse parties were represented by the same attorney, to his detriment. Mr. Lazaro then sought to have the firm of Rabalais, Unland, & Lorio disqualified from the case via Motion filed on June 21, 2004.
On June 23, 2004, Mr. Lazaro filed an Opposed Motion and Order to Continue and Refix GAB Robins Risk Management Services, Inc. Exceptions of No Right/Cause of Action to have the Motions filed by GAB continued and reset for hearing. Mr. Lazaro subsequently filed a Motion for Expedited Hearing and on July 15, 2004. The case was subsequently heard on July 19, 2004.
After a hearing on all matters, the OWC entered two (2) "Final Judgments" in the case on July 23, 2004. The first judgment specified the following: (1) that Mr. Lazaro's Motion to Disqualify the law firm from representing both LIGA and the NOB was DENIED; (2) the Motion to Strike GAB's Exception of No Cause of Action and in the alternative to Compel Discovery would not be heard due to insufficient notice; (3) GAB's Exception of No Cause and Right of Action was GRANTED; (4) Mr. Lazaro's Exception to Reduce Benefits for Failure to Cooperate with Vocational Rehabilitation was DENIED; (5) the NOB's Motion to Reduce Benefits for Failure to Cooperate with Vocational Rehabilitation was taken under advisement; and (6) Mr. Lazaro's Motion to Accelerate Benefits was DENIED due to Mr. Lazaro's failure to carry his burden of proof with respect to showing that the NOB's failure to pay was a "willful refusal to *824 pay," and that six consecutive installments were not due before the motion to accelerate was filed.
The second judgment, issued on July 23, 2004, as well, denied the NOB/LIGA's Motion to Reduce Workers' Compensation Benefits for failure to cooperate with vocational rehabilitation.
Subsequently, an Order was signed on July 26, 2004, which, again, denied the NOB/LIGA's Motion to Reduce Workers' Compensation Benefits for failure to cooperate with vocational rehabilitation. Additionally, the Order directed Mr. Lazaro to participate in vocational rehabilitation, "if the defendant desires to set it up." This timely appeal followed.
Specifically, Mr. Lazaro cites three assignments of error in his brief: 1) he argues that the OWC erred in dismissing his claims against GAB; 2) he argues that all penalties, interest, and fees be paid or, in the alternative, that the September 26, 2003, judgment (to date) and penalties be paid; and finally, 3) he argues that the OWC erred in not disqualifying the law firm which represented the NOB and LIGA.

Law and Discussion:

I. GAB'S EXCEPTION OF NO CAUSE/RIGHT OF ACTION

By his first assignment of error, Mr. Lazaro argues that the OWC erred in dismissing his claims against GAB, thereby sustaining GAB's Exceptions of No Cause/Right of Action.
We reiterated the standard of review for an Exception of No Cause of Action in Southern Tool Supply, Inc. v. Beerman Precision, Inc., 03-0960 (La.App. 4 Cir. 11/26/03), 862 So.2d 271, 277 as follows:
We review a trial court's decision on an exception of no cause of action de novo "because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition." City of New Orleans v. Board of Comm'rs of Orleans Levee Dist., 93-0690, p. 28 (La.7/5/94), 640 So.2d 237, 253. In so doing, we are confined to the allegations of the petition. No evidence can be introduced to support or to controvert an exception of no cause of action. La. C.C.P. art. 931. Rather, we must accept as true the well pleaded factual allegations set forth in the petition. Based thereon, our job is to determine "whether, on the face of the petition, the plaintiff is legally entitled to the relief sought." Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1235 (La.1993). A defendant's peremptory exception of no cause of action is designed to test the legal sufficiency of the plaintiff's petition. It poses the question "whether the law affords a remedy on the facts alleged in the pleading." Id.

Southern Tool Supply, Inc. v. Beerman Precision, Inc., 862 So.2d at 277-278.
Similarly, the determination of whether the plaintiff has a right of action is [also] a question of law. Ralph v. City of New Orleans, 04-1270 (La.App. 4 Cir. 12/14/05) 921 So.2d 988, 995-96, citing Horrell v. Horrell, 99-1093, (La.App. 1 Cir. 10/6/00), 808 So.2d 363, 367-68. Appellate review of questions of law is simply to determine whether the trial court was legally correct or legally incorrect. Ralph v. City of New Orleans, 921 so.2d at 996, citing Cangelosi v. Allstate Ins. Co., 96-0159, (La.App. 1 Cir. 9/27/96), 680 So.2d 1358.
The Supreme Court discussed the two exceptions at length in Badeaux v. Southwest Computer Bureau, Inc., XXXX-XXXX, at *825 *2, 2006 WL 668724(La.), 929 So.2d 1211 (La.3/17/06), as follows:
Although these two exceptions are often confused or improperly combined with the same exception, the peremptory exceptions of no right of action and no cause of action are separate and distinct. La. C.C.P. art. 927(4) and (5); Industrial Cos., Inc. v. Durbin, 02-0665, p. 6 (La.1/28/03); 837 So.2d 1207, 1212. This court has recognized that one of the primary differences between the exception of no right of action and no cause of action lies in the fact that the focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit, while the focus in an exception of no cause of action is on whether the law provides a remedy against the particular defendant. Id.

The function of an exception of no right of action is a determination of whether plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the petition. La. C.C.P. art. 927; Turner v. Busby, 03-3444, p. 4 (La.9/9/04), 883 So.2d 412, 415. The exception of no right of action serves to question whether the plaintiff in the particular case is a member of the class of persons that has a legal interest in the subject matter of the litigation. Id.

In contrast, an exception of no cause of action questions whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition. Industrial Cos., 02-0665 at p. 6, 837 So.2d at 1213. The exception is triable on the face of the petition and, to determine the issues raised by the exception, each well-pleaded fact in the petition must be accepted as true. Id. An exception of no cause of action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. Id. at p. 7, 837 So.2d at 1213; Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007, 1018 (La.1993). If the petition states a cause of action on any ground or portion of the demand, the exception should generally be overruled. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1236 (La.1993). Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. Industrial Cos., 02-0665 at p. 7, 837 So.2d at 1213.
In the instant case, Mr. Lazaro's Petition alleged that GAB "failed to provide the service, duties, and requirements set forth by State law at La. R.S. 22:3031, et seq." In his Appellate Brief, Mr. Lazaro does not allege any wrong-doing by GAB for which a statutory remedy exists, nor does he specifically cite to any specific statute within the Workers' Compensation Act which provides a civil remedy against GAB, as a third-party administrator. The general rule in Louisiana law is that an employee's exclusive remedy for work-related personal injuries or occupational diseases is in Workers' Compensation, not in tort. Zimko v. American Cyanamid, 03-0658 (La.App. 4 Cir. 6/8/05) 905 So.2d 465, 475, writ denied 925 So.2d 538, 2006 WL 1050043 (La.3/17/06) See La. R.S. 23:1032(A). Thus, Mr. Lazaro's claims are limited to the compensation claims against his employer, the NOB, or its insurer, Villanova.
Additionally, in the instant case, Mr. Lazaro asserts his right to enforce a contract[8] claim on the basis of a stipulation *826 pour autri, in the alleged contract between GAB and the NOB's insurer, Villanova. However, Villanova was never made a party to the original claim for benefits. Furthermore, we reiterate that Mr. Lazaro's brief does not cite to any statute within the Workers' Compensation Act which provides a civil remedy for an insurer's third-party administrator's failure to provide services.
The OWC in its oral reasons for judgment stated that "[a] plain reading of the statute obviously shows that you have no civil remedy in this particular case under these particular allegations." Thus, based on the above discussion, we find that the OWC's determination was legally correct in sustaining GAB's exceptions of No Cause/Right of Action, and therefore find that this assignment of error is without merit.

II. ACCELERATION OF PAYMENTS, PENALTIES AND FEES

1.Acceleration of Payments:
In his second assignment of error, Mr. Lazaro alleges that the OWC erred in denying his Motion for Acceleration of Supplemental Earnings Benefits flowing from the September 26, 2003 judgment.
An appellate court may not set aside a district court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). The Louisiana Supreme Court has provided a two-part test for the reversal of a fact finder's determinations: (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of a trial court; and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993); McElveen v. City of New Orleans, 03-1609, (La.App. 4 Cir. 9/14/04), 888 So.2d 878, 880-81.
Louisiana Revised Statute 23:1333 allows acceleration of workers' compensation benefits under certain circumstances. Specifically, four statutory elements must be satisfied prior to accelerating a prior award of weekly benefits. They include: (1) an "award awarding compensation" against the employer, (2) "insolven[cy] or fail[ure] to pay six successive installments as they become due" by employer, (3) existence of "installments not yet payable under the award," and (4) the employee is not "adequately protected by insurance and receiv[ing] payments thereunder." See Duncan v. State, DOTD, 615 So.2d 305 (La.1993); Davillier v. Transit Management of Southeast Louisiana, 97-2848 (La. App. 4th Cir.9/9/98), 718 So.2d 600.
Additionally, our jurisprudence has added another requirement, that the failure to pay be a "willful refusal." Duncan, at 309; Davillier, 718 So.2d at 602. "Thus it is not enough for an employee to merely establish the employer's failure to pay six successive installments as they became due. Rather, the employee must show that the employer's failure to make the payments resulted from a willful refusal." Duncan v. State, DOTD, 615 So.2d at 309.
Again, we point out that initially, neither GAB nor LIGA were added as parties to the original claim for benefits. The record indicates that Mr. Lazaro had not pursued any claim against GAB nor LIGA, nor had he named GAB nor LIGA *827 as defendants until he was informed of Villanova's insolvency. Another important relevant fact is that Mr. Lazaro never added the NOB's insurer to the initial claim for benefits. The OWC judge discussed this specific fact at the trial on July 19, 2004, in the following colloquy:
Court: But you never cared who the insurer was. You never brought them in.
Mr. Hackett: Didn't have to until they told me on December 22nd of 2003 that the insurer went bankrupt  in liquidation, and there was no way they were going to pay; LIGA had to.
Court: Hasn't your position always been that the New Orleans Brass is not insolvent, that they have assets?
Mr. Hackett: Their position. No. Their position is that they come into court and say defunct. I say, well, show us. And I have checked, and I don't see any bankruptcy. What else can I do?
Court: I thought your position was that the New Orleans Brass has assets? No?
Mr. Hackett: Well, until they tell me differently, I have to assume that they may have. I don't know that. . . .
In the instant case, the OWC concluded that Mr. Lazaro did not prove that the employer failed to pay six successive installments as they became due. In open court, the OWC judge stated:
. . . [T]he reason the motion was denied is I am in agreement that six consecutive payments, installments has not been due before the motion was filed. I did look at the case that you [Mr. Lazaro] cited. I am in agreement with the defense's interpretation of that case. That was a consent to pay weekly. The judgment here does not say anything about paying weekly therefore, it would be paid monthly unless the parties agree otherwise.
The record itself reflects that the OWC judge was not convinced by Mr. Lazaro's evidence presented in support of his Motion to Accelerate Benefits. In the oral reasons for judgment, the OWC judge stated:
. . . [The][c]laimant did not carry the burden of proof that defendant's payment was a willful refusal to pay. It was a very serious issue as to what was owed under the judgment. We had discussions, we had meetings, we attempted to resolve what it was. We were unable to accomplish that. . . .
. . . .
There was nothing that could have been paid by the employer who was allegedly defunct. The wrong insurer was thought to be in on the case the entire time. Then, we're notified supposedly that Villanova is in there and is, in fact, in liquidation, and everybody was in a dilemma as to what was happening.. . .
We also agree with the Appellees' argument that there was no payment schedule set by the OWC or the respective parties via a consent judgment. The Appellees indicate that the February 8, 2003, judgment is silent with respect to the OWC tabulating a specific SEB payment due or establishing a corresponding payment schedule of the SEB award. The appeal record itself fails to shed any additional light on the complete payment activity in the instant case. Although the record contains documentation of earnings made by Mr. Lazaro by Cornerstone Marketing[9] from as early as November 2002, through December 2003, the amounts of these payments *828 vary from as little as $27.00, for a commission payment, to a $2,059.15 salary payment.
Furthermore, the record also indicates that Mr. Lazaro did not timely submit wage documentation, or rather the 1020 Forms, to the NOB as was required by the February 8, 2003 judgment. While the Appellees contend that their requests for the 1020 Forms was required because certain deductions had to be made, the record does not have any copies of the 1020 Forms which were submitted to the NOB for processing. The only wage information contained in the record is Mr. Lazaro's check stubs that he received from Cornerstone. The record indicates also that these payments were "advances" which would be subject to deductions once Mr. Lazaro submitted the corresponding 1020 Form for the payment period. However, the record nonetheless is silent with respect to the SEB award, in toto.
Nevertheless, in light of LIGA's tendering payment of $10,021.53 to Mr. Lazaro on June 15, 2004, he maintained in his Reply Brief that "[s]imple mathematical calculation reveals that the judgment of the workers' compensation court was not paid even as the judgment existed at the time of partial payment . . . on 6/15/04. However, there is no discussion of calculation of payment or judicial interest." He maintains that the payment of $10,021.53, merely constituted a partial payment and he also averred that the OWC judgment does not address interest.
However, once LIGA was named in the Petition for Damages, it was formally put on notice of the monies due to Mr. Lazaro, and it forwarded payment of the accrued judgment. Hence, LIGA stepped into the shoes of the NOB and its insurer, Villanova, to tender Mr. Lazaro's SEB payments despite the insolvency of the NOB and its insurer.
In fact, the accrued judgment was paid by LIGA prior to the hearing on the same issue with respect to Mr. Lazaro's Motion to Accelerate Payments which he sought against the NOB. Nevertheless, the OWC found that Mr. Lazaro did not carry his burden in proving that the NOB fit each of the criteria set forth above in order to prevail on his Motion to Accelerate.
Therefore, based upon the above discussion, we also find that the OWC was not manifestly erroneous nor clearly wrong in denying Mr. Lazaro's Motion to Accelerate Payments, as he did not successfully carry his burden of proof to support his claim. Thus, we find that this assignment of error is also without merit.

2. Penalties and Attorneys' Fees:
Mr. Lazaro also argues that the appropriate fees and penalties be paid to him as a result of the NOB's failure to make SEB payments within thirty days after the final non-appealable judgment flowing from the September 26, 2003, judgment against the NOB.
La.R.S. 23:1201(E)[10] provides for penalties against the employer or his insurer for *829 failure to pay workers' compensation benefits, and La.R.S. 23:1201(I), and (J)[11] provides for attorneys' fees against the employer or his insurer for failure to pay benefits. Under La. R.S. 23:1201(G), an employer is liable for penalties and attorneys' fees if it does not pay an award payable under a final, nonappealable judgment within 30 days.
In the instant matter, it appears somewhat one-sided for Mr. Lazaro to now argue that he is entitled to fees as a result of not taking the procedural precaution of adding Villanova to the original claim for SEBs. In effect, this Court is being asked to correct Mr. Lazaro's failure to add Villanova to his original claim and further allow him to benefit from same through his request for penalties, costs, and other fees. We decline to do so.
Consequently, it therefore follows that had the NOB's insurer, Villanova, been added as a defendant from the outset, Mr. Lazaro's SEB payments would not have been delayed through the insolvency of named defendants, the NOB and Villanova. Rather, LIGA would have been put on notice earlier, and Mr. Lazaro's SEB payments may have been tendered timely.
Earlier in our discussion, we determined that the OWC did not err in denying Mr. Lazaro's Motion to Accelerate Payments against the NOB. Therefore, we also find that the OWC was not manifestly erroneous nor clearly wrong in denying Mr. Lazaro's claims for interest, penalties, and fees. Thus, we will not entertain the issue of interest, attorneys' fees, and penalties because these issues are now moot.
Although Mr. Lazaro does have an alleged personal interest in the subject matter of the instant case, he has failed to state a legal cause of action against the remaining Appellees[12] which would warrant the imposition of the fees. Once the NOB and its insurer were insolvent, LIGA became responsible for the remaining monies due under the judgment which awarded the SEBs. However, the OWC never made any determination that there was a "willful refusal" to tender payments by the NOB. The only determination that was made by the OWC was that Mr. Lazaro had not met his burden of proof in supporting his Motion to Accelerate Payments.
Furthermore, since the judgment is silent with respect to Mr. Lazaro's request for interest payments and fees, we find that the OWC denied these demands, as our jurisprudence has determined that *830 "when a judgment is silent as to part of relief requested by a claimant the judgment is deemed to have denied that relief." Rhone v. Boh Bros., 01-0270 (La.App. 4 Cir. 12/12/01), 804 So.2d 764, 768, citing Succession of Lane, 95-0558 (La.App. 4 Cir. 9/28/95), 662 So.2d 82. We, therefore, find that the failure of the OWC to grant Mr. Lazaro's request for interest, fees, and penalties was not inadvertent and find that this assignment of error is without merit.

III. DISQUALIFICATION OF ATTORNEYS:

In his final assignment of error, Mr. Lazaro argues that the OWC erred in not disqualifying the NOB's and LIGA's attorneys, or more specifically, the law firm of Rabalais, Unland, and Lorio. Mr. Lazaro alleged that the firm also represented LIGA when it was made a party to the proceedings. Nevertheless, the OWC heard Mr. Lazaro's argument for disqualification at the hearing on July 19, 2004, concerning his corresponding Motion to Disqualify, and denied his motion.
In brief, Mr. Lazaro merely alluded to the fact that a conflict of interest may exist between the NOB, GAB, and LIGA. In his brief, Mr. Lazaro stated: "[i]t is impossible to fathom a scenario in which there does not exist a conflict of interest in the instant situation." He also indicated that "Claimant sought the disqualification of the law firm . . . as attorney of record for the [sic] LIGA, the last party for whom they acted as attorney in the proceeding. At bottom, if all is well with all parties and their counsel with respect to the causes of action among the defendants, Claimant cannot complain."
The OWC did not issue reasons for its judgment concerning the Motion, but our review of the record did not reveal any conflicts of interest relative to the representation of the named Appellees.
Additionally, as Mr. Lazaro points out in brief, Rule 1.7 of the Model Rules of Professional Conduct[13] provides that the parties must consent to the representation after consultation. The record does not contain any documented conflicts, adverse or otherwise, which demonstrated any "conflict of interest" in the firm's representation of the NOB, GAB, and LIGA. The only conflict alluded to by Mr. Lazaro is that "LIGA would not be able to waive its right to a claim against any other party." However, this allegation is merely a potential issue which could arise.
Notwithstanding, the obvious inquiry at this juncture is whether any of the named Appellees raised this issue, or whether the OWC judge had any basis on which to *831 grant Mr. Lazaro's Motion to Disqualify, but failed to do so. The record does not show that this issue was raised by any of the Appellees, and considering the record as a whole, this Court cannot find any documentation to justify a reversal of the OWC's denial of Mr. Lazaro's Motion to Disqualify. Thus, we find that this assignment of error is also without merit.

DECREE
Thus, for the reasons stated herein, we hereby AFFIRM the judgment of the Office of Workers' Compensation.
AFFIRMED.
NOTES
[1] The New Orleans Brass was declared defunct after the 2002 hockey season.
[2] The facts related to Mr. Lazaro's physical injury will not be reiterated here. The injuries and medical treatment are detailed in a prior appeal to this Court by the NOB, Lazaro v. New Orleans Brass, XXXX-XXXX (La.App. 4 Cir. 5/4/05), 903 So.2d 538. This earlier appeal addressed the issues concerning Mr. Lazaro's eligibility for Supplemental Earnings Benefits (SEB). This Court determined that Mr. Lazaro was permanently disabled. The NOB subsequently applied for supervisory writs with the Louisiana Supreme Court, Lazaro v. New Orleans Brass, XXXX-XXXX, 917 So.2d 1113 (La.12/16/05), but the NOB's application was denied.
[3] The "1020 Form," is actually titled with the headline "Employee's Monthly Report of Earnings" in the record.
[4] La. R.S. 23:1333, titled Employer's insolvency or failure to pay after award; acceleration of payments provides:

A.If the employer against whom an award awarding compensation has been rendered becomes insolvent or fails to pay six successive installments as they become due, the installments not yet payable under the award shall immediately become due and exigible and the award shall become executory for the whole amount; but if the employee or his dependent is adequately protected by insurance and receives payments thereunder this right shall not accrue.
B.When the award of temporary total disability benefits is accelerated pursuant to this Section, the acceleration shall be limited to an additional six months of benefits.
[5] La. R.S. 23:1226(E), listed under the heading of Rehabilitation of injured employees, provides:

When it appears that a retraining program is necessary and desirable to restore the injured employee to suitable gainful employment, the employee shall be entitled to a reasonable and proper retraining program for a period not to exceed twenty-six weeks, which period may be extended for an additional period not to exceed twenty-six additional weeks if such extended period is determined to be necessary and proper by the workers' compensation judge. However, no employer or insurer shall be precluded from continuing such retraining beyond such period on a voluntary basis. An injured employee must request and begin retraining within two years from the date of the termination of temporary total disability as determined by the treating physician. If a retraining program requires residence at or near the facility or institution and away from the employee's customary residence, reasonable cost of board, lodging, or travel shall be borne by the employer or insurer. A retraining program shall be performed at facilities within the state when such facilities are available.
[6] La. C.C.P. Art. 925, titled Objections Raised by Declinatory Exception; Waiver, reads:

A.The objections which may be raised through the declinatory exception include but are not limited to the following:
(1) Insufficiency of citation.
(2) Insufficiency of service of process.
(3) Lis pendens.
(4) Improper venue.
(5) The court's lack of jurisdiction over the person of the defendant.
(6) The court's lack of jurisdiction over the subject matter of the action.
B.When two or more of these objections are pleaded in the declinatory exception, they need not be pleaded in the alternative or in any particular order.
C.All objections which may be raised through the declinatory exception, except the court's lack of jurisdiction over the subject matter of the action, are waived unless pleaded therein.
[7] La. C.C.P. Art.2088, titled Divesting of jurisdiction of trial court, provides in part:

The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal.
[8] We must also mention that the record indicates that Mr. Lazaro propounded discovery to GAB in order to obtain a copy of the contract between GAB and Villanova. Mr. Lazaro, alleges that GAB never forwarded the contract and was in essence "stonewalling" his efforts to prove his contract claim, under a stipulation pour autri.
[9] Cornerstone was the owner of the NOB.
[10] La.R.S. 23:1201(E) provides in pertinent part:

If any installment of compensation payable without an order is not paid within the time period provided in Subsections (B), (C), or (D) of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve per cent additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay.
[11] La.R.S. 23:1201(I) provides in pertinent part:

I. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims. The provisions as set forth in R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions as set forth in R.S. 22:658(C) shall be applicable to claims arising under this Chapter.
J. Notwithstanding the fact that more than one violation in this Section which provides for an award of attorney fees may be applicable, only one reasonable attorney fee may be awarded against the employer or insurer in connection with any hearing on the merits of any disputed claim filed pursuant to this Section, and an award of such single attorney fee shall be res judicata as to any and all conduct for which penalties may be imposed under this Section which precedes the date of the hearing.
[12] Once LIGA tendered payment to Mr. Lazaro, it was dismissed from the instant case.
[13] Rule 1.7 provides:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.