46 So.3d 678 (2010)
Thomas WYNNE
v.
William TROTTER and Special T, L.L.C.
No. 2010-CA-0090.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 2010.
Opinion Granting Reconsideration August 4, 2010.
*680 Dewey M. Scandurro, Scandurro and Layrisson, L.L.C., New Orleans, LA, for Thomas Wynne and Janna Wynne.
Michael J. Maginnis, Daniel R. Estrada, Maginnis & Hurley, APLC, New Orleans, LA, for Defendants/Appellants.
(Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, and Judge MICHAEL E. KIRBY).
CHARLES R. JONES, Judge.
The defendant-Appellants, William Trotter and Special T, L.L.C. appeal the district court's judgment in favor of the plaintiffs-Appellees, Thomas Wynne and Janna Wynne. We amend and affirmed as amended.
On August 14, 2003, Mr. Wynne, a yacht broker and expert fishing vessel operator, accompanied Wiley Horton and two friends on a weekend fishing trip in Venice, Louisiana, aboard the M/V Tuner, a 29' foot fishing vessel. A tropical storm on August 15 stalled the fishing trip, and the M/V Tuner remained docked at the Cypress Cove Marina. During the following day, Mr. Wynne and a fishing companion noticed a large vessel approaching in the direct path of the M/V Tuner. That vessel, a 43' foot M/V Special T, was owned by Special T, L.L.C. and operated by Mr. Trotter, who was unable to control the boat due to a loss of power.
As the M/V Special T approached the dock, Mr. Trotter attempted to restart the vessel's engines to prevent a possible collision with the M/V Tuner. After Mr. Trotter sent out an alarm to notify the fishermen aboard the M/V Tuner of his intentions, Mr. Wynne advised Mr. Trotter not to turn on the M/V Special T's engines. Meanwhile, to prevent the M/V Tuner from being damaged in the event of a collision, crew members of the vessel positioned rubber fenders alongside the M/V Tuner. Mr. Wynne remained on the port side of the M/V Tuner's bow platform and held the fenders close to the boat with his hands, to ensure that they stayed in place.
Mr. Trotter proceeded with attempts to restart the M/V Special T's engines and within feet from the M/V Tuner, the engines finally restarted. Shortly thereafter, Mr. Wynne alleged that a water surge was *681 created by the M/V Special T's engines, which subsequently caused him to lose balance and fall. In his own description, Mr. Wynne was then "knock jumped" onto the dock[1]. Mr. Wynne declined treatment from the emergency medical technicians who were called to the scene of the accident. However, two days later on August 17, 2003, he sought treatment from a college acquaintance named Dr. James C. McIntosh, an orthopaedic surgeon. Dr. McIntosh then discovered that Mr. Wynne had fractured the calcaneus bone in his right heel.
Mr. and Mrs. Wynne filed suit against Mr. Trotter and Special T, L.L.C. on September 30, 2009, in the 25th Judicial District Court of Plaquemines Parish, alleging negligence on the part of Mr. Trotter and Special T, L.L.C. A judgment was issued in favor of the Wynnes, granting Mr. Wynne $185,000 in damages for pain and suffering, and $25,000 for loss of consortium to Mrs. Wynne. The district court also added Louisiana judicial prejudgment interest in the amount of $81,329.46 to the past and future damages awarded to the Wynnes, from the date of demand. This timely appeal followed.
Mr. Trotter and Special T, L.L.C. raise eight (8) assignments of error on appeal:
1. The district court erred in finding complete fault on the part of Mr. Trotter and Special T, L.L.C. with respect to causation and damages to Mr. Wynne, while finding no fault on the part of Mr. Wynne.
2. The district court incorrectly concluded that a "sudden emergency" was caused by Mr. Trotter and Special T, L.L.C.
3. The district court erred in awarding $185,000 in damages for pain and suffering to Mr. Wynne.
4. The district court erred in granting Mrs. Wynne damages in the amount of $25,000, for loss of consortium.
5. With respect to the damages awarded, the district court erred in applying the Louisiana judicial interest rate in lieu of the Federal maritime rate.
6. The district court erred in applying prejudgment interest rates on its awards to the Wynnes, for past and future damages.
7. The district court erred in assigning fault to Special T, L.L.C.
8. The district court erred in failing to rule on Mr. Trotter and Special T, L.L.C.'s written objections to the depositions submitted by the Wynnes, before a judgment was entered.
Upon reviewing a district court's factual findings in a civil case, appellate courts are to apply the "manifest error" standard of review. Rando v. Anco Insulations, Inc., 08-1163, p. 29 (La.5/22/09), 16 So.3d 1065, 1087. In applying this standard, an appellate court can not disturb a trial court's findings "unless that finding is clearly wrong in light of the record reviewed in its entirety." Noel v. Housing Authority of New Orleans, 09-0711, p. 2 (La.App. 4 Cir. 3/31/10), 36 So.3d 982. Moreover, "when two permissible views of evidence exist, the fact finder's choice between them can not be manifestly erroneous or clearly wrong." Moody v. Cummings, 09-1233, p. 4 (La.App. 4 Cir. 4/14/10), 37 So.3d 1054.
Since the issues of negligence and liability are the subject of Mr. Trotter and Special T, L.L.C.'s first, second, and seventh *682 assignments of error, we shall address them together. In Mr. Trotter and Special T, L.L.C.'s first and second assignments of error, they contend that the district court erred in determining that Mr. Trotter was at fault for the M/V Special T's collision with the M/V Tuner, and for Mr. Wynne's subsequent injuries, without finding that Mr. Wynne was partially at fault.
On the issue of liability, general maritime cases tried in state courts are to be reviewed using the "manifest error standard." Milstead v. Diamond M Offshore, Inc., 95-2446 (La.7/2/96), 676 So.2d 89, 96, 1996 A.M.C. 2341. Utilizing a duty-risk analysis, Louisiana courts dictate that five elements must established in determining whether a person is negligent: "(1) the defendant had a duty to conform his or her conduct to a specific standard of care (2) the defendant failed to conform to this standard of care, (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages". Brewer v. J.B. Hunt Transport, Inc., 09-1408, p. 7 (La.3/16/10), 35 So.3d 230.
One threshold inquiry in any negligence action is whether the defendant owed the plaintiff a duty. Federal maritime Inland Navigational Rule 5 denotes that a vessel has a duty to "maintain proper look-out by sight and hearing, as well as by all available means in the prevailing circumstances so as to make a full appraisal of the situation and of the risk of collision." 33 U.S.C. § 2005. This Court previously applied the Inland Navigational Rules, holding that the pilot of a vessel has a duty to navigate the vessel with proper lookout, at a safe speed. See e.g., Koepp v. Sea-Land Service, Inc., 93-2562 (La.App. 4 Cir. 11/17/94), 645 So.2d 1269, 1276. In regards to causation, it has been held that when a moving vessel allides[2] with a stationary object, the former is presumed at fault. The Oregon, 158 U.S. 186, 197, 15 S.Ct. 804, 809, 39 L.Ed. 943 (1895), Dow Chemical Company v. Dixie Carriers, Inc., 463 F.2d 120, 122, n. 4 (5th Cir.1972).
Mr. Trotter and Special T, L.L.C. argue that Mr. Wynne did not act reasonably in positioning himself on the port bow of the M/V Tuner. In doing so, according to Mr. Trotter and Special T, L.L.C., Mr. Wynne created a perilous situation and should therefore be found partially responsible for his injuries. Mr. Trotter and Special T, L.L.C. further claim that a sudden emergency was not created from the M/V Special T's engines because Mr. Wynne had sufficient time to avoid any injury. Therefore, they contend, Mr. Trotter acted reasonably in restarting the engines so as to avoid an accident.
Mr. and Mrs. Wynne counter that the district court's findings should not be disturbed. They assert that Mr. Wynne acted reasonably in protecting the M/V Tuner from its pending collision with the M/V Special T, as confirmed at trial by the defense's own expert, Ben Sheets. Also, the Wynnes argue that Mr. Trotter's negligent operation of the M/V Special T created a sudden emergency which knocked Mr. Wynne onto the marina's deck, subsequently shattering the calcaneus bone in his right heel.
Our review of the record indicates that upon Mr. Trotter's releasing of the siren to indicate his attempts to restart the M/V Special T's engines, Mr. Wynne (an expert operator of large vessels) responded with a warning not to start the engines. Mr. *683 Trotter ignored this warning and busied himself with trying to work the M/V Special T's controls. As the M/V Special T moved closer to the M/V Tuner, the M/V Special T's engines restarted, and Mr. Trotter attempted to maneuver the vessel by putting its starboard engine in reverse. Such actions caused the M/V Special T to accelerate directly towards the M/V Tuner. In his report, Mr. Trotter's expert witness Mr. Sheets noted that "moving vessels do not usually collide with stationary objects unless the vessel is mishandled in some way." Therefore Mr. Sheet's observation, corroborated with the district court's findings, leads this Court to find that Mr. Trotter breached his duty to exercise reasonable care in operating the M/V Special T.
We also find that Mr. Trotter did in fact cause the M/V Special T to collide with the docked M/V Tuner. According to maritime law, "every vessel shall use all available means appropriate ... to determine if [a] risk of collision exists." 33 U.S.C. § 2007(a). The accident could have been avoided had Mr. Trotter not ventured out to sea on the M/V Special T during a tropical storm. However, even if the district court determined that Mr. Trotter acted reasonably in operating the M/V Special T during a tropical storm, the fact still remains that he failed to explore an alternative routeone that would have not required the M/V Special T to enter the marina. According to the Inland Navigational Rule 8, "if there is sufficient sea room, alteration of course alone may be the most effective action to avoid a close-quarters situation". 33 U.S.C. § 2008(c). Lastly, Mr. Trotter could have heeded Mr. Wynne's warning and stopped his attempts to restart the M/V Special T's engines. Maritime law denotes that "if necessary to avoid collision or allow more time to assess the situation, a vessel shall slacken her speed or take all way off by stopping or reversing her means of propulsion". 33 U.S.C. § 2008(e). In failing to utilize any of these options, we find that the M/V Special T would not have collided with the Mr. Tuner, but for the actions of Mr. Trotter.
We find that Mr. Wynne however, did act reasonably in positioning himself on the M/V Tuner's port bow. Mr. Wynne, Mr. Horton, and Ed Bell (Mr. Trotter's eyewitness), all agree that the M/V Special T drifted at an angle in the direct path of the M/V Tuner's port bow. Not expecting Mr. Trotter to restart the M/V Special T's engines, Mr. Wynne remained on the port bow to ensure that the rubber fenders would stay in place, so as to avoid any possible damage to the M/V Tuner in the event of a collision with the M/V Special T. Mr. Trotter does not contest these witnesses' statements as to the projected path of the M/V Special T. Also, Mr. Trotter's own expert witness, Mr. Sheets, agreed that Mr. Wynne was in the best position to defend the M/V Tuner from the M/V Special T, and that standing inside of the vessel's bow would have rendered Mr. Wynne incapable of defending the boat. Therefore, since Mr. Wynne was in the best position to defend the M/V Tuner, it can not be said that he is at fault for the collision.
Because he should have reasonably foreseen that restarting the M/V Special T's engines would cause harm to Mr. Wynne, Mr. Trotter's actions proximately caused the injuries of Mr. Wynne. When entering an area where other vessels are docked, a moving vessel must "take into consideration the reasonable effects to be anticipated from its speed and motion through the water." New Orleans Steamboat Co. v. M/T Hellespont Glory, 562 F.Supp. 391, 392 (E.D.La.1983). As the M/V Special T drifted closer to the M/V *684 Tuner, Mr. Trotter continued to resume his attempts of restarting the M/V Special T's engines, despite the fact that the vessel was within a few feet of the M/V Tuner. Furthermore, in restarting the engines of the M/V Special T at an angle directly to where Mr. Wynne was positioned, Mr. Trotter should have foreseen that a sudden increase in speed would cause a powerful water surge that could knock Mr. Wynne off of the boat.
After losing his balance from the water surge caused by the M/V Special T's engines, Mr. Wynne took reasonable measures to avoid falling into the water, as cited by defense witness Ed Burger. Upon landing on the dock, Mr. Wynne shattered his calcaneus bone, as noted by Dr. McIntosh[3]. While Mr. Trotter and Special T, L.L.C. do not dispute that Mr. Wynne's involuntary fall onto the dock caused him injury, they do contend that his actions were not reasonable, thus relieving them from liability for Mr. Wynne's injuries. In determining whether a plaintiff is at fault for his own injuries, this Court has previously applied the "sudden emergency doctrine", which states:
a person is not negligent in failing to avoid injury to themselves if he suddenly finds himself in a position of imminent peril without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid the impending risk of danger.
Marigny v. Allstate Ins., 95-0952 (La.App. 4 Cir. 1/31/96), 667 So.2d 1229, 1231. Because of the sudden and unexpected water surge caused by the M/V Special T's engines, Mr. Wynne was unable to safely place himself onto the dock to avoid the risk of being injured.
In Koepp v. Sea-Land Service Inc., 93-2562 (La.App. 4 Cir. 11/17/94), 645 So.2d 1269, this Court found that due to an unexpected wave wash caused by the pilot-defendant's negligent operation of a vessel, the plaintiff was not negligent in failing to avoid any injuries he received because he did not have time to properly avoid the injury by getting off the boat. Similarly, we agree that in creating a sudden emergency, Mr. Trotter legally caused the injuries to Mr. Wynne.
Based on our review, the district court's finding that Mr. Wynne's injuries directly resulted from the negligent actions of Mr. Trotter was not manifestly erroneous nor clearly wrong. This assignment of error is without merit.
In addition, Mr. Trotter and Special T, L.L.C.'s seventh assignment of error contends that the district court incorrectly found that Special T, L.L.C. was liable for the M/V Special T's collision with the M/V Tuner.
Under general maritime law, "A vessel is liable in rem for maritime collisions caused by the fault of its compulsory pilot." Probo II London v. Isla Santay MV, 92 F.3d 361, 365 (5th Cir.1996). Furthermore, a vessel owner is liable to an injured party under the tort of negligent entrustment if shown that the vessel owner had knowledge or privity of the operator's acts of negligence. Farrell Lines, Inc. v. Jones, 530 F.2d 7, 9 (5th Cir.1976), citing 46 U.S.C.App. § 183.
Mr. Trotter and Special T, L.L.C. incorrectly rely upon Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), for the assertion that Mr. Wynne can not pursue a claim of unseaworthiness against Special T, L.L.C. In Kermarec, the Supreme Court held that persons aboard a vessel as *685 mere social guests can not recover from the vessel's owner for any injuries sustained while aboard the vessel. Id. at 1269. Their reliance on this case is misplaced because Kermarec does not apply to collisions caused by a guest who causes injury to persons aboard other vessels. Mr. Wynne was not a guest passenger aboard the M/V Special T. Also, the owner of the M/V Special T (Mr. Trotter's younger brother) was negligent in entrusting Mr. Trotter with the vessel, in light of Mr. Trotter's inexperience with operating the M/V Special T[4]. This inexperience became more apparent the day following the accident, when Mr. Trotter crossed into the path of the M/V Tuner again, almost creating a second collision. For the aforementioned reasons, we find that the district court's finding that Special T, L.L.C. was liable for both the accident and Mr. Wynne's subsequent injuries was not manifestly erroneous nor clearly wrong. This assignment of error is without merit.
In their third and fourth assignments of error, Mr. Trotter and Special T, L.L.C. allege that the district court's damage awards to Mr. Wynne for pain and suffering, and Mrs. Wynne's damage award for loss of consortium was erroneous.
Generally, a trial court has vast discretion in its determination of damages; and an appellate court can not disturb these findings if there is no abuse of discretion. La. Civ.Code. Art. 2324.1; Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607. In previous cases, this Court has upheld a trial court's award for damages. See e.g., Todd v. Delta Queen Steamboat Co., 07-1518 (La.App. 4 Cir. 8/6/08), 15 So.3d 107.
As justification for the $185,000 award in pain and suffering damages, Mr. Wynne cites comparative jurisprudence which granted similar amounts to plaintiffs who received similar injuries. See, Istre v. ABC Insurance Company, 517 So.2d 1225 (La.App. 4 Cir.1987); LeBleu v. Dynamic Industrial Constructors, Inc., 526 So.2d 1184 (La.App. 3 Cir.1988); Sallis v. City of Bossier, 28,483 (La.App. 2 Cir. 9/25/96), 680 So.2d 1333. Mr. Trotter and Special T, L.L.C. contest Mr. Wynne's reliance upon these cases; however, this contention lacks merit for two pivotal reasons. For one, the disability ratings assessed to the plaintiffs in each case do not drastically differ from Dr. McIntosh's finding that Mr. Wynne incurred a 12% impairment to his right leg and foot. Second, Mr. Trotter and Special T, L.L.C. fail to acknowledge the fact that like the other plaintiffs in the cases cited, Mr. Wynne is now partially disabled, possessing a permanent limp and losing his ability to run and stand for extended time periods.
Mr. Trotter and Special T, L.L.C. also contest the district court's inclusion of Mr. Wynne's subtalar joint arthritis in its determination of damages based on the accident. They cite Dr. McIntosh's prediction that the accident would not cause any inflammation in Mr. Wynne's subtalar joints.
In Housley v. Cerise, 579 So.2d 973, 980 (La.1991), the court found that an injury is presumed to have been caused by an accident if:
before the accident, the injured person was in good health, but commencing with the accident, the symptoms of the disabling condition appear and continuously manifests themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility *686 of causal connection between the accident and the disabling condition.
Prior to the boating accident, Mr. Wynne complained of no subtalar joint injuries. However, two days after the boating accident, Mr. Wynne complained to Dr. McIntosh of soreness in his subtalar joints. In further treatment, Mr. Wynne also received epidural injections into his subtalar joints by Dr. William Savoca.[5] Therefore, applying the holding in Housley, we find that the district court did have the discretion to include Mr. Wynne's subtalar injuries in its appropriation of damages.
With respect to the district court's $25,000 award to Mrs. Wynne for loss of consortium, this Court has previously held that a party can recover for loss of consortium based on: (1) loss of love and affection; (2) loss of society and companionship; (3) impairment of sexual relations: (4) loss of performance of material services; (5) loss of financial support; (6) loss of aid and assistance; and (7) loss of fidelity. Thonn v. Cook, 03-0763, p. 14 (La.App. 4 Cir. 12/10/03), 863 So.2d 628, 639. Moreover, "a cause of action for loss of consortium arises when the injured party's condition deteriorates to such an extent that his spouse is actually deprived of his consortium, service, and society." Delphen v. Dep't of Transp. and Dev., 94-1261 (La.App. 4 Cir. 5/24/95), 657 So.2d 328, 337.
Three months after her husband's injury, Mrs. Wynne's household and parenting chores increased due to her husband's immobility. Also, Mr. Wynne's permanent limp and inability to run has affected the family's extracurricular activities, including hiking and walking together, and the coaching of his son's basketball team by Mr. Wynne. Lastly, while the couple's sexual relationship was not impaired, Mr. and Mrs. Wynne now sleep in separate beds because of Mr. Wynne's restless sleeping habits. Bearing these factors in mind, the lifestyle of the Wynne family was drastically altered as a result of Mr. Wynne's injuries. Therefore, it can not be said that the district court abused its discretion in awarding loss of consortium damages to Mrs. Wynne.
Based on this analysis, we find that the district court's determination of pain and suffering damages to Mr. Wynne and loss of consortium damages to Mrs. Wynne did not constitute an abuse of discretion. This assignment of error lacks merit.
In their fifth and sixth assignment of error, Mr. Trotter and Special T, L.L.C. argue that the district court erred in applying the Louisiana judicial prejudgment interest rate to Mr. and Mrs. Wynne, for their past and future damage awards (specifically to Mr. and Mrs. Wynne's future damage awards).
To overturn the district court's determination on its desired application of law, an appellant "must demonstrate that the challenged holdings of a prior panel are clearly erroneous and would work an injustice". Todd Shipyards Corp. v. Auto Transp., S.A., 763 F.2d 745, 752 (5th Cir. 1985). Specifically, a trial court has the discretion to set the rate of prejudgment interest and can refer to either Louisiana law or federal maritime law. Id.
Mr. Trotter and Special T, L.L.C. argue that the district court erred in failing to apply the federal maritime interest rate of .37% to Mr. and Mrs. Wynne's awards, citing 28 U.S.C. § 1961(a). However, Mr. Trotter and Special T, L.L.C.'s *687 reliance on the federal maritime statute is erroneous, as the imposition of a federal maritime interest rate only applies to "judgment[s] in a civil case recovered in a district court . . . to be calculated from the date of the entry of the judgment." 28 U.S.C. § 1961(a). Therefore, the statute cited by Mr. Trotter and Special T, L.L.C. only applies to post-judgments interest, and not interest made on pre-judgments. Applying the holding from Todd Shipyards Corp., the district court had the option of choosing either Louisiana law or federal maritime law; and therefore, it can not be said that its application of Louisiana law was clearly erroneous and would work an injustice. Therefore, we find that this assignment of error lacks merit.
We note however, that the district court did err in awarding prejudgment interest to the Wynnes' awards for future damages. In Milstead v. Diamond M Offshore Inc., 95-2446 (La.7/2/96), 676 So.2d 89, 97, the Supreme Court noted that federal courts generally do not award prejudgment interest to awards for future damages. Moreover, this Court has previously found that "prejudgment interest may not be awarded on a judgment for future damages, as it amounts to a double recovery." Smith v. Tidewater Inc., 04-0195 (La.App. 4 Cir. 3/2/05), 918 So.2d 1, 17, 2005 A.M.C. 972. Thus, we find that the award of prejudgment interest to Mr. and Mrs. Wynne for future damages was erroneous.
It should also be mentioned that the district court awarded prejudgment interest, from the date of judicial demand. Though Mr. Trotter and Special T, L.L.C. do not contest this decision, such award was manifestly erroneous. In maritime law, a trial court is to award prejudgment interest from the date of the injury. Todd Shipyards Corp., 763 F.2d at 752. Also, in Corliss v. Elevating Boats, Inc., 599 So.2d 434, 439 (La.App. 4 Cir.1992), this Court reversed a district court's decision to award interest from the date of judicial demand, and amended the judgment to award interest from the date of injury. We therefore find the district court committed legal error in awarding prejudgment interest to Mr. and Mrs. Wynne's damages from the date of demand.
Based on this analysis, we find that the district court did not err in applying the Louisiana judicial prejudgment interest rate to Mr. and Mrs. Wynne's award. However, we do find that the district court's decision to award prejudgment interest to Mr. and Mrs. Wynne's future damages from the date of demand to be manifestly erroneous or clearly wrong. Thus, we amend the judgment of the district court and vacate the award of prejudgment interest to Mr. and Mrs. Wynne's past damages, from the date of Mr. Wynne's injury.
The eighth and final assignment of error raised by Mr. Trotter and Special T, L.L.C. is that the district court erred in failing to expressly rule on objections to depositions submitted by Mr. and Mrs. Wynne before a judgment was entered.
This court has previously held that "when a judgment is silent as to relief requested, the judgment is deemed to have denied that relief." Lazaro v. New Orleans Brass, 05-0591, p. 20 (La.App. 4 Cir. 5/26/06), 933 So.2d 817, 830. (citing Succession of Lane, 95-0558 (La.App. 4 Cir. 9/28/95), 662 So.2d 82).
Mr. Trotter and Special T, L.L.C. attempt to dispute the credibility of some of the witnesses' statements, by making various objections to depositions submitted by Mr. Wynne. However, bearing the holding from Lazaro in mind, this Court finds that the district court's silence on these *688 issues constituted her overruling of Mr. Trotter's and Special T, L.L.C.'s objections. Therefore, this assignment of error lacks merit.

DECREE
For the foregoing reasons, we amend the district court's judgment in part to vacate the prejudgment interest rate applied to Mr. and Mrs. Wynne's past damage awards, from the date of injury. We also amend the district court's judgment in part to vacate the prejudgment interest rate applied to Mr. and Mrs. Wynne's future damage awards. In all other respects, the judgment of the district court is affirmed.
AMENDED AND AFFIRMED AS AMENDED

ON APPLICATION FOR REHEARING
CHARLES R. JONES, Judge.
We grant rehearing to the Appellees, Mr. and Mrs. Wynne, for the sole purpose of clarifying the decree of this Court in the following respects:
1. the award of prejudgment interest, and
2. the calculation of the future damage award.
In our decree, we stated, in pertinent part:
We amend the district court's judgment in part to vacate the prejudgment interest rate applied to Mr. and Mrs. Wynne's past damage award, from the date of injury.
The Wynnes are correct in arguing in their application for rehearing, that some clarification was required in order to prevent a misinterpretation in the language in the decree of this Court. The law clearly states that under maritime law, a district court is to award prejudgment interest from the date of the injury. See Todd Shipyards Corp., v. Auto Transportation S.A., 763 F.2d 745, 752 (5th Cir.1985); Corliss v. Elevating Boats, Inc., 599 So.2d 434, 438 (La.App. 4 Cir.1992). We therefore find that this argument has merit, and amend the decree to specify that the district court judgment award prejudgment interest from the date of injury.
The Wynnes also argue in their application for rehearing, that this Court was correct in amending the judgment of the district court by vacating the portion of prejudgment interest attributable to future damages. The Wynnes further argue that "neither Judge Lobrano, nor this Court has quantified the amount of past versus future damages...." Thus, they request that this Court either remand to the district court for the calculation of future damages, or that this Court make the calculation. We agree.
The district court is in the best position to make the calculation for future damages. However, our opinion was clear that the district court erred in calculating prejudgment interest for future damages as applying such interest is akin to a "double recovery". We reasoned:
. . . [T]he district court did err in awarding prejudgment interest to the Wynnes' awards for future damages. In Milstead v. Diamond M Offshore Inc., 95-2446 (La.7/2/96), 676 So.2d 89, 97, the Supreme Court noted that federal courts generally do not award prejudgment interest to awards for future damages. Moreover, this Court has previously found that "prejudgment interest may not be awarded on a judgment for future damages, as it amounts to a double recovery." Smith v. Tidewater Inc., 04-0195 (La.App. 4 Cir. 3/2/05), 918 So.2d 1, 17, 2005 A.M.C. 972. Thus, we find that the award of prejudgment interest to *689 Mr. and Mrs. Wynne for future damages was erroneous.
Our decree was clear that the judgment of the district court was vacated only with respect to the interest applied to the future damage award. However, since there is no clear apportionment of past and future damages, the district court shall apportion its general damage award into past and future components, and calculate prejudgment interest as to all past losses from date of injury.
Therefore, the decree of this Court, dated June 25, 2010, is now amended to read as follows:

DECREE
For the foregoing reasons, we amend the judgment of the district court in part to vacate the prejudgment interest rate applied to the past damage awards of Mr. and Mrs. Wynne, and to award prejudgment interest to the damage awards from the date of injury. We also amend the judgment of the district court, in part, to vacate the prejudgment interest applied to the award of future damages sustained by Mr. and Mrs. Wynne. Further, we remand the matter to the district court for an apportionment of its general damages award into past and future components, and order the district court to apply prejudgment interest to the past damage award. Finally, in all other respects, the judgment of the district court is affirmed.
APPLICATION FOR REHEARING GRANTED; JUDGMENT AMENDED AND AFFIRMED AS AMENDED; REMANDED
NOTES
[1] The record indicates that Mr. Wynne stated that he was "hit into being knocked" onto the deck.
[2] An allision is defined as the contact of a vessel with a stationary object; and this term is used interchangeably with collision. Black's Law Dictionary, (9th ed.2009)
[3] The record indicates that Mr. Trotter fled the scene after the accident, and failed to inquire about the condition of the M/V Tuner or its crew members.
[4] The record indicates that Mr. Trotter's testimony in regards to his boating experience was impeached due to his own discrepancies. In his deposition, he testified that he had never operated the M/V Special T before the day of the accident; however at trial, Mr. Trotter claimed to have operated vessels similar to the size of the M/V Special T.
[5] Dr. Savoca is an interventional radiologist who has consulted with Dr. McIntosh regarding Mr. Wynne.