23 So.3d 362 (2009)
Terry LEE
v.
Jerry BRIGGS and Safeway Insurance Company of Louisiana.
No. 2008 CA 2120.
Court of Appeal of Louisiana, First Circuit.
September 10, 2009.
*363 Michael C. Davis, Baton Rouge, Louisiana, for Plaintiff/Appellee, Terry Lee.
Matthew D. Fontenot, Lafayette, Louisiana, for Defendants/Appellants, Safeway Insurance Company of Louisiana and Jerry Briggs.
Before: KUHN, GUIDRY, GAIDRY, McDONALD, and WELCH, JJ.
McDONALD, J.
In this case, the defendants appeal a trial court judgment finding the defendant driver solely at fault in causing an automobile accident and the amount of general damages awarded to the plaintiff for his personal injuries. We affirm the findings of liability and amend the damage award.

FACTS AND PROCEDURAL HISTORY
On January 27, 2006, plaintiff, Terry Lee, was backing his truck and trailer into his private drive off of LA 1026 in Livingston Parish when he was struck by a vehicle traveling northbound on LA 1026 driven by defendant, Jerry Briggs. Lee subsequently filed suit against Briggs and his insurer, Safeway Insurance Company of Louisiana, for his injuries and property damage resulting from the accident. After a bench trial, the court found Briggs to be 100 percent at fault in causing the accident and rendered judgment in favor of Lee and against Briggs and Safeway in the amounts of $10,000.00 for general damages, $4,522.00 for medical bills, and $4,018.79 for property damage. This appeal followed, in which defendants assert that the trial court's allocation of fault and general damages award were erroneous.

DISCUSSION
In their first assignment of error, defendants argue that the trial court should have assigned the majority of the fault to the plaintiff because he breached his duty to yield to oncoming traffic. In support of *364 their assertion that plaintiff breached that duty, defendants cite a statute and cases dealing with the duties of care owed by and to a vehicle entering a highway from a private driveway or private roads. However, that was not the situation in this case. The plaintiff was not entering the highway; he was leaving the highway and entering a private driveway. Regardless of the duty of care owed by the plaintiff to other vehicles approaching him on the highway, the trial court found that the cause of this accident was Briggs's speed and failure to look out for other vehicles.
After considering all the evidence presented at trial, the trial court found Lee to be free from fault in causing the accident. The court noted that Briggs "had time to see [Lee's] vehicle," but was "operating his vehicle in a manner which was too fast for the conditions." The court concluded that had Briggs "been driving slower or paying more attention, he could have avoided the accident."
As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. Therefore, we review allocations of fault employing the manifest error standard. Laborde v. St. James Place Apartments, 05-0007, p. 5 (La.App. 1 Cir. 2/15/06), 928 So.2d 643, 647. Only after making a determination that the factfinder's apportionment of fault is clearly wrong can we disturb the award, and then only to the extent of lowering it or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion. Id.
The court in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985), listed a number of factors for us to consider in determining the portion of fault attributable to the parties, including the level of the risk, whether the behavior was inadvertent or done with awareness of the danger, the significance of what was sought, the capacities of the parties, and any other extenuating circumstances. Reviewing these factors as they apply to this case, we cannot say the court was manifestly erroneous in apportioning fault as it did, although we might have assigned some degree of fault to the plaintiff had we been sitting as trier of fact.
Defendants next argue that the trial court erred in awarding plaintiff general damages for four months of pain and suffering when the evidence only supported an award for three months. The defendants point out that after approximately two months of treatment, plaintiff stopped treatment for several weeks and began again for a brief period of time prior to discontinuing treatment. When questioned about this gap in treatment at trial, Lee testified that he stopped treatment with his chiropractor for a few weeks, although he was still in some pain, because he was attending real estate school all day and looking for a job, but that he went back for more treatment after experiencing a "flare up" in pain. The trial court, after hearing this testimony about the gap in treatment, found that Lee experienced four months of pain and suffering caused by the accident.
This court is not the finder of fact, but must review the cold record; we do not have the benefit of hearing the witnesses. Although this court might weigh the evidence differently if it were the trier of fact, we are mindful of our role as a reviewing court and may not substitute our view of the evidence for that of the trial court when that court's view is reasonable and supported by evidence. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
However, the standard of review that applies to an appellate court's examination of a factfinder's award of general damages is whether the fact finder abused *365 its discretion. Graffia v. Louisiana Farm Bureau Cas. Ins. Co., 08-1480, p. 5 (La. App. 1 Cir. 2/13/09), 6 So.3d 270, 273-74. We recognize the vast discretion that the trial court possesses on the issue of quantum. However, it is still reviewable under the abuse of discretion standard and we take issue with the trial court's attempted use of a mathematical formula to arrive at a general damage award. The trial court awarded $2,500 per month in general damages for four months for a total of $10,000. The trial court has the responsibility to tailor the damage award in each case to fit the specific facts of the case, not use a "cookie cutter" approach in determining the amount of damages. To do so is an abuse of discretion or a lack of the exercise of discretion. Additionally we believe the $10,000 general damage award to Mr. Lee is an abuse of discretion. The record establishes that Mr. Lee experienced neck and back pain after the accident and received regular chiropractic care from January 31st through April 7th of 2006, a period of approximately two months. Mr. Lee testified that his pain was "pretty much over" in April, but he returned for four treatments in May when his pain flared up.
Although the trial court expressly awarded $2,500 per month for four months of pain and suffering, Mr. Lee's testimony does not establish that he was actually in pain for four full months. Further, based on the medical evidence, Mr. Lee saw no other medical doctor other than the chiropractor. He did not testify that he took any over-the-counter pain medication and there is no evidence that he was ever prescribed any pain medication. The chiropractic records establish that the treatments were of a conservative nature, consisting of ultrasounds, manipulations, traction, and the application of cold packs. Beginning with the initial treatment on January 31, 2006, Mr. Lee received three treatments per week for the month of February through the treatment on Friday, March 17. For the remainder of March and through the first week of April, when he ceased treatment for a month, he was only receiving two treatments a week. When he returned for additional treatment in May, he received one treatment per week. Thus, it is difficult to maintain that the amount of pain and suffering he was experiencing in the first six weeks (3 treatments a week) was the same as for the next four weeks (2 treatments a week), or for the last month (1 treatment a week). Based on this medical record, we amend the damage award to $6,225.

DECREE
The judgment of the trial court is affirmed on the issue of liability. The general damage award of $10,000 is reduced to $6,225. The costs of this appeal are to be split between the parties with the defendants, Jerry Briggs and Safeway Insurance Company of Louisiana, cast for two-thirds and the plaintiff, Terry Lee cast for one-third.
AFFIRMED IN PART, AMENDED IN PART. RENDERED.
WELCH, J., dissents in part and agrees in part and assigns reasons.
GAIDRY, J., agrees in part, dissents in parts with reasons.
GUIDRY, J., dissents in part for the reasons assigned by KUHN, J.
KUHN, J., dissents in part and assigns reasons.
WELCH, J., agreeing in part and dissenting in part.
I agree with the majority on the issue of liability. However, I dissent regarding *366 the damages portion of the opinion. Damages are awarded by the trier of fact based upon the law and evidence. Most, if not all, district court judges base their awards on the length of pain and suffering and have some idea of what they believe is an adequate award for a month of pain and suffering. While this is subject to an abuse of discretion review by the appellate court, I believe an award of $2,500 a month for pain and suffering, while on the high end of the spectrum, is not an abuse of discretion. The only mistake according to the majority is that the trial judge set forth her formula; had she not done so, this award based on the testimony and evidence in the record would be affirmed. Thus, the judgment on damages should be affirmed.
GAIDRY, J., agrees in part and dissents in part with reasons.
While I agree with the portion of the majority opinion affirming the trial court judgment on liability, I disagree that the damage award should be amended because I do not believe that there was an abuse of discretion. While I agree that the trial court should not use a mathematical formula to arrive at a general damages award, the plaintiffs testimony regarding the pain and suffering he experienced simply does not support a finding that a general damages award of $10,000.00 is an abuse of discretion. Although there was a lapse in treatment when the plaintiffs work and school schedule did not permit him to report for treatment, he did not testify that he was pain-free during this lapse, and he resumed treatments once his pain flared up. Based on the plaintiffs testimony, I do not believe the trial court erred in finding that he experienced four months of pain or in awarding $10,000.00 in general damages for his pain and suffering. We must remain mindful that we are not the trial court and should not act as a one by substituting our judgment for that of the trial court.
KUHN, dissenting in part.
I dissent from the majority's position insofar as it affirms the trial court's judgment finding the defendant driver, Mr. Jerry Briggs, solely at fault in causing the automobile accident. A review of the record demonstrates there is no support for assessing Mr. Briggs with 100% fault. Mr. Briggs had a duty to maintain a sharp lookout and to see that which in the exercise of ordinary care should have been seen. Theriot v. Bergeron, 05-1225, p. 6 (La.App. 1st Cir.6/21/06), 939 So.2d 379, 383. In assessing all fault to Mr. Briggs, however, it is apparent the trial court failed to consider La. R.S. 32:281 A, which provides, "The driver of a vehicle shall not back the same unless such movement can be made with reasonable safety and without interfering with other traffic." Clearly, the trial court ignored that plaintiff, Mr. Terry Lee, violated this statutory duty by blocking at least a portion of the northbound travel lane of Juban Road with no consideration for approaching traffic, while he backed his trailer into his private driveway. Because there were at least two vehicles in the southbound lane of travel, which had come to a stop while Mr. Lee backed his trailer into the driveway, the record demonstrates that Mr. Briggs was not able to use the southbound lane to avoid colliding with Mr. Lee, without placing his life and the lives of other people in danger. The trial court's apportionment of 100% fault to Mr. Briggs and no fault to Mr. Lee was clearly wrong and contrary to the evidence.
Further, it is apparent that the trial court did not consider all of the Watson factors in assessing fault and, in effect, the trial court applied the doctrine of last clear chance, without considering the risks *367 posed by Mr. Lee's conduct. In Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985), the court explained the appropriate considerations for a comparative fault analysis, as follows:
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
Thus, the principles considered in the application of the last clear chance doctrine are subsumed by the comparative fault analysis. The application of the last clear chance doctrine is not, therefore, a separate consideration for the trier of fact. Gibson v. State through Dept. of Transp. and Development, 95-1418 (La.App. 1st Cir.4/4/96), 674 So.2d 996, 1004.
Applying the Watson factors to the instant case, Mr. Lee's conduct of blocking the northbound travel portion of the roadway while he backed a trailer into his driveway presented a great risk of injury to the other motorists in the area. He presented no testimony to justify his actions or to explain the necessity of why he engaged in such conduct. Otherwise, he took no action, such as utilizing a flagman, flares, or cones that could have possibly alerted other drivers of the dangers of his actions. Admittedly, Mr. Lee's conduct was inadvertent without consideration for the dangers his conduct presented to oncoming traffic. However, the risk posed was great, and there was no apparent need for his conduct or any other extenuating circumstances to justify his actions. If he had given thought to the dangers posed by his conduct, he surely could have prevented the accident.
On the other hand, the trial court found that Mr. Briggs "was operating his vehicle in a manner which was too fast for the conditions. . . . [Mr. Briggs] had time to see [Mr. Lee's] vehicle partially blocking the road. Had [Mr. Briggs] been driving slower or paying more attention, he could have avoided the accident. He had the duty to look out for [Mr. Lee's] vehicle." Mr. Briggs estimated his speed at 45 miles per hour, and Ms. Shirley Lee testified that Mr. Briggs was "coming pretty fast." However, the record does not establish the posted speed limit for the area in which the accident happened. The testimony also supported that it was "dry." Admittedly, there is conflicting testimony regarding whether the accident occurred during the day, at dusk, or in the evening. Assuming the trial court determined that the accident occurred during the day when lighting conditions were optimal for Mr. Briggs to see Mr. Lee backing his trailer into the driveway, there is no evidence in the record to support a factual finding that Mr. Briggs was travelling in excess of the posted speed limit. This fact cannot be assumed based on the testimony presented.
Mr. Briggs testified that he first noticed Mr. Lee's vehicle when he rounded the curve near Mr. Lee's house. He estimated he was 200 to 300 feet away from Mr. Lee's vehicle. Mr. Lee testified that he saw Mr. Briggs approaching from 300 to 400 feet away, but he was unable to completely clear the lane of travel before Mr. *368 Briggs approached. Mr. Briggs testified that he applied his brakes when he noticed that his travel lane was obstructed, and he swerved his vehicle to the left, but despite this action, he still hit the left, front side of Mr. Lee's truck. The trial court found that Mr. Briggs was inattentive. Regardless of the posted speed limit, he should have been travelling at a speed at which he could respond to other motorists or obstructions in his travel lane. Because the testimony supports a finding that there were no obstructions that would have prevented Mr. Briggs seeing Mr. Lee's truck in the roadway from at least 200 to 300 feet away, the trial court correctly concluded that he breached his duty to maintain a sharp lookout and to see that which in the exercise of ordinary care should be seen. Mr. Briggs' conduct was inadvertent and presented a risk of danger to others on the roadway. Mr. Briggs, however, had to react quickly to the situation presented to him with no advance notice of the dangers presented by Mr. Lee's conduct.
As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. Based on the above considerations, I would conclude that the trier of fact's allocation of fault was clearly wrong and manifestly erroneous. Only after making a determination that the trier of fact's apportionment of fault is clearly wrong can an appellate court disturb the award, and then only to the extent of lowering it or raising it to the highest or lowest. Clement v. Frey, 95-1119 (La.1/16/96); 666 So.2d 607, 609, 610. Based on these considerations, I would raise Mr. Lee's fault to 50% and lower Mr. Briggs' fault to 50%.