928 So.2d 643 (2006)
Diane LABORDE
v.
ST. JAMES PLACE APARTMENTS, Money Hill Plantation, LLC and United National Group Insurance Company.
No. 2005-CA-0007.
Court of Appeal of Louisiana, First Circuit.
February 15, 2006.
*645 Marti Tessier, Mandeville, Counsel for Plaintiff/Appellant Diane Laborde.
Robert A. Redwine, New Orleans, Counsel for Defendants/Appellees St. James Place Apartments, Money Hill Plantation, LLC and United National Insurance Co.
Before: CARTER, C.J., DOWNING, and GAIDRY, JJ.
GAIDRY, J.
In this action for damages sustained by a tenant in a fall at an apartment complex, the trial court rendered judgment in favor of the plaintiff and awarded damages, but found plaintiff to be fifty percent at fault. Plaintiff appealed, and defendants answered the appeal. For the following reasons, we affirm.

DISCUSSION
Plaintiff, Diane LaBorde, moved into St. James Place Apartments with her two minor children in 1996. The apartment complex consisted of multiple apartment buildings with a common area between the buildings which was grassy and wooded. According to Mark Cardella, who performed *646 lawn maintenance at the apartment complex from 1992 until March 1999, the common area contained tree roots and "quite a few" sawed-off tree stumps which protruded a few inches from holes in the ground. The same year they moved in, LaBorde's daughter told her that she had tripped and fallen in the common area due to a stump sticking out of a hole in the ground. LaBorde complained about the stump to the apartment complex's on-site manager, Margaret Kern, and assumed that it would be taken care of.
On May 27, 1999, LaBorde discovered a cat tearing into garbage bags on her porch. She had had problems with cats getting into her garbage in the past and became angry. She began chasing the cat through the common area in the hopes that it would leave her garbage alone in the future. While running after the cat, LaBorde's foot hit a stump protruding from a hole in the ground and she fell, injuring her left ankle. LaBorde crawled back to her apartment and called Kern, who brought her to the hospital. X-rays were performed, and LaBorde was diagnosed with a sprained ankle. She was put into a soft cast and instructed to follow-up with an orthopedic specialist.
LaBorde began treating with Dr. Mark Hontas, an orthopedist, in June 1999. She was put into a walking cast and given physical therapy. An MRI revealed a bone fragment in her foot, for which surgery was performed in December 2000. She was briefly confined to a wheelchair after the surgery, then placed in a cast, and eventually underwent eight more weeks of physical therapy. Dr. Hontas discharged LaBorde in July 2001 and diagnosed her with a five percent total post-surgery disability. He also indicated that she would likely develop some degree of post-traumatic degenerative arthritis of the ankle. At the time of trial, LaBorde claimed to still suffer from ankle problems, and she wears orthopedic shoes and an ankle sleeve for this reason.
LaBorde filed suit against St. James Place Apartments, its owner, Money Hill Plantation, and their insurer, United National Group Insurance Company (referred to collectively as "Defendants"). LaBorde stipulated that her damages were less than $50,000.00, and a bench trial was held. Kern, who was no longer employed by the apartment complex, was subpoenaed to testify by LaBorde, but did not appear due to health problems. When LaBorde attempted to testify at trial as to what Kern told her about the stump and hole when she complained about them in 1996, the court sustained the defendants' hearsay objection. The matter was held open for some time to allow LaBorde to depose Kern, but LaBorde's attorney eventually rested her case without Kern's testimony and instead proffered LaBorde's excluded testimony.
The court rendered judgment in favor of LaBorde, awarding $20,000.00 in general damages and $18,396.93 in special damages. The trial judge also found LaBorde to be fifty percent at fault in causing her injuries.
The trial judge gave the following oral reasons for his ruling:
The Court ... finds that the property was defective because it had a condition which caused an unreasonable risk of harm to the plaintiff[.][T]he defendant [had] been put on notice of . . . the hole by the plaintiff after her daughter tripped and fell prior to this accident.
Moreover, there are no sidewalks [through] the common areas of the apartment complex[,] so it is foreseeable by the lessor that tenants would walk through the wooded areas and grassy areas to travel through on their way to a neighbor's apartment. In fact, Ms. LaBorde *647 testified that residents commonly walked through the wooded and grassy areas and that children also played in there. Accordingly, the lessor has a duty to maintain those areas in a safe condition[,][t]he cost of which would be minimal compared to the risk of harm to its lessees[,] and it failed to do so.
. . . .
Finally, the Court finds that the defective conditions of the premises caused the injuries to the plaintiff. The court, however, would also apply the rule of law that pedestrians must face some responsibility for avoiding injury and should see that which . . . should be seen by a reasonable ... person. The Court finds that although she testified that she was watching where she was going, plaintiff established by her own testimony that she was not entirely attentive.. . . She stated that she had had it with the cat and was very angry [as] she set out to chase the cat across the wooded area.
Accordingly, the Court assigns fifty percent liability to the defendants, fifty percent liability to the plaintiff.
LaBorde appealed from the trial court's judgment, asserting that the court erred in assigning comparative fault, in awarding only $20,000.00 in general damages, and in sustaining defendants' hearsay objection. Defendants answered the appeal, and asserted that the trial court had erred in finding that they were liable for LaBorde's injuries. Specifically, the defendants alleged that LaBorde had removed herself from the scope of the duty owed to her when she left the safety of the sidewalk or path and ran through a wooded area with high grass which was obviously not intended for pedestrian use; that the tree stump and hole, located in the tall grass off of a trail in the wooded common area of the apartment complex, did not pose an unreasonable risk of harm to a person using ordinary care under the circumstances; and that LaBorde did not exercise the ordinary care expected of a reasonably prudent person under the circumstances.

DISCUSSION

Comparative Fault
Like all factual findings, the standard of review of comparative fault allocations is that of manifest error. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985). The court in Watson listed a number of factors to be considered in determining the portion of fault attributable to the parties, including the level of the risk; whether the behavior was inadvertent or done with awareness of the danger; the significance of what was sought; the capacities of the parties; and any other extenuating circumstances. Watson, 469 So.2d at 974.
Considering the Watson factors in light of the particular facts of this case as outlined above, we cannot say that the trial court committed manifest error in making its allocation. LaBorde knew that there had been a sawed-off stump and hole in the common area and that it was a danger to pedestrians, as her own daughter had fallen a few years prior and she had felt it necessary to report it to the apartment manager so that the hazard could be removed. While she may have believed that the apartment manager had had the stump cut out and the hole filled, the common area was still grassy and wooded and contained both tree roots and sawed-off stumps. LaBorde was understandably angry at the cat for tearing into her garbage, but a reasonably prudent adult would surely understand that it is more important to watch where one is running than to attempt to teach a cat a lesson. There is no merit to this assignment of error.

*648 Quantum

LaBorde next complains that the general damages award of $20,000.00 is abusively low. The discretion vested in the trier of fact in fashioning an award of general damages is great, and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). While we might have made a higher award had we been sitting as trier of fact, after conducting a thorough review of the record we conclude that the $20,000.00 general damages award is not below that which a reasonable trier of fact could assess under the circumstances of this case.

Hearsay and the "Uncalled Witness Rule"
LaBorde alleges on appeal that the trial court erred in excluding as hearsay LaBorde's testimony regarding Kern's statements to her. The excluded testimony included statements allegedly made by Kern both before and after the accident, and several statements were made after Kern ended her employment with defendants. LaBorde claims that Kern's statements fall under one of the hearsay exceptions enumerated in La.Code Evid. art. 801(D). Specifically, she cites the following provisions of the article:
D. Statements which are not hearsay. A statement is not hearsay if:
(2) Personal, adoptive, and authorized admissions. The statement is offered against a party and is:
(a) His own statement, in either his individual or a representative capacity;
* * * *
(3) Relational and privity admissions. The statement is offered against a party, and the statement is:
(a) A statement by an agent or employee of the party against whom it is offered, concerning a matter within the scope of his agency or employment, made during the existence of the relationship;
* * * *
LaBorde also argues that the trial court erred in failing to apply the "uncalled witness rule." According to the "uncalled witness rule," when a party having control of a favorable witness fails to call them to testify, a presumption arises that the facts, as that party would have them, do not exist. Driscoll v. Stucker, 04-0589, pp. 18-19 (La.1/19/05), 893 So.2d 32, 47.
The first provision cited by LaBorde, La.Code Evid. article 801(D)(2)(a), is not applicable to this situation since Kern is not a party, and this article applies to a party's own statements which are offered against him. Furthermore, while Kern's statements made during her employment would be admissible under 801(D)(3)(a), anything she said to LaBorde during their telephone conversation after her employment was terminated would be inadmissible as hearsay. Finally, LaBorde asserts that the "uncalled witness rule" should have been applied, creating a presumption that the defendants did not call Kern to testify because her testimony would have been contrary to their version of the facts. Since Kern was no longer employed by defendants, we fail to see *649 how she was under their "control" for purposes of the "uncalled witness rule." However, regardless of the applicability of article 801(D)(3)(a) or the uncalled witness rule, there is nothing in the proffered testimony that would change the outcome of the case had it been allowed in. The trial court found that the defendants had notice of the stump and hole, that it constituted a dangerous condition, that it was foreseeable that residents of the complex would traverse the common areas of the property, and that defendants failed to fix the dangerous condition even though it would have been relatively inexpensive to do so. Kern's statements would not have any effect on the findings of the court with which LaBorde is aggrieved, i.e., the amount of general damages awarded and the issue of comparative fault. The trial judge's assignment of fifty percent fault to LaBorde is due to its finding that she failed to behave as a reasonably prudent pedestrian when she chased a cat across a wooded area. Nothing in the proffered testimony would change this. Thus, there is no merit to this assignment of error.

Defendants' Assignment of Error
The defendants assert in their answer to the appeal that because LaBorde left the safety of the sidewalk and ran through a wooded area with high grass which was obviously not intended for pedestrian use, they were not responsible for her injuries. The defendants took the position that a tree stump in a hole located in the tall grass of a wooded area does not pose an unreasonable risk of harm to a pedestrian exercising reasonable care. However, we find no error in the trial court's finding that it was reasonably foreseeable that residents of the complex would walk through the wooded or grassy area to reach their apartment or a neighboring apartment building and that a stump and hole in the ground in a grassy area such as this would present an unreasonable risk of harm. Defendants' assignment of error is likewise without merit.

DECREE
For the above reasons, the trial court judgment is affirmed, and costs of this appeal are to be shared equally by the parties.
AFFIRMED.