# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 9, 2010

No. 09-40088

Charles R. Fulbruge III
Clerk

CONSTANTINOS PALLIS,

Plaintiff–Appellant

v.

UNITED STATES OF AMERICA,

Defendant–Appellee

Appeal from the United States District Court
for the Southern District of Texas (Galveston)
USDC No. G-07-202

Before HIGGINBOTHAM, GARZA, and PRADO, Circuit Judges.

PER CURIAM:[*]

Constantinos Pallis appeals the result of his maritime trial before the district court. Pallis sued the United States, as owner of the *M/V Cape Flattery*, alleging that the negligence of the ship's crew and the unseaworthy condition of the ship caused him to injure his knee. On appeal, Pallis argues that the district court committed clear error in its assignment of contributory negligence,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-40088

rejection of his unseaworthiness argument, and determination of damages.

We affirm the district court's findings on contributory negligence, seaworthiness, and future lost wages because Pallis has not demonstrated that the district court clearly erred. However, we find that the district court clearly erred when it denied Pallis future maintenance and therefore reverse and remand for a determination of the proper amount.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pallis began to work in the merchant marines in 2002, starting in Group C, the lowest rating. It took Pallis two years to catch a ship. Pallis eventually joined the crew of the *M/V Cape Flattery* in 2005. He worked as a wiper, a position involving various physical tasks, including the removal of trash and loading and unloading of supplies.

On the day of his injury, a supervisor assigned Pallis and another wiper to carry sundry items up and down several levels between the main deck and the engine room. Pallis and the second wiper worked at this task through the morning, then took a break for lunch. Pallis returned to the project, alone, in the afternoon.

Pallis asked the First Assistant Engineer for help moving the bulky objects and also inquired about using a crane to lift a net filled with the items. The First Assistant Engineer told Pallis that the second wiper was assigned elsewhere and that the crane was not working. However, there were many chainfalls available throughout the ship to lift heavy objects. Pallis injured his knee while carrying a piece of steel weighing about fifty pounds from the engine room to the main deck for disposal.

Pallis sued the United States under the Jones Act, 46 U.S.C. § 30104, alleging that the United States, through its agents on board the *M/V Cape Flattery*, negligently caused his injury. Pallis also alleged that the *M/V Cape Flattery* was unseaworthy under maritime law, claiming that too few seamen

had been assigned the task resulting in his injury.

The district court conducted a bench trial and issued findings of fact and conclusions of law, accompanied by a damages judgment. The district court found Pallis contributorily negligent for his own injury, assigning him 75% of the fault. The district court rejected Pallis's unseaworthiness argument. In its damages determination, the district court (1) rejected as too speculative Pallis's argument that his lost future wages should include an upgrade to a more senior ship position; (2) found that Pallis would incur expenses for future medical treatment; (3) established a "reasonable amount" for pain and suffering; and (4) denied Pallis's claim for maintenance damages because the court found he had current earning capacity and would receive damages for future medical expenses. The district court awarded Pallis 25% of his past lost wages, past and future medical expenses, and pain and suffering. Pallis's past damages totaled $116,481.09 and future medical expenses totaled $78,256. The district court entered final judgment against the United States for $48,684.27, with pre- and post-judgment interest. Pallis timely appealed.

## II. ANALYSIS

In a bench trial under maritime law, we consider the district court's "findings concerning negligence and causation" as findings of fact, subject to a clear error review. *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 303 (5th Cir. 2008). Similarly, we regard the district court's findings on "issues of seaworthiness and negligence" as findings of fact, reviewed for clear error. *Jackson v. OMI Corp.*, 245 F.3d 525, 528 (5th Cir. 2001) (citing *McAllister v. United States*, 348 U.S. 19, 20 (1954)). We also review damage awards for clear error, *Nichols v. Petroleum Helicopters, Inc.*, 17 F.3d 119, 121 (5th Cir. 1994) (citing *Graham v. Milky Way Barge, Inc.*, 824 F.2d 376, 389 (5th Cir. 1987)), giving the district court "wide discretion" to craft its damage award. *Douglass v. Delta Airlines, Inc.*, 897 F.2d 1336, 1339 (5th Cir. 1990) (citations omitted).

No. 09-40088

When reviewing for clear error,"[w]e entertain a strong presumption that the court's findings must be sustained even though this court might have weighed the evidence differently." *Johnson*, 544 F.3d at 303; *see also Avondale Indus. v. Int'l Marine Carriers, Inc.*, 15 F.3d 489, 492 (5th Cir. 1994) (stating that factual findings of the district court are "binding" absent clear error). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court based on all of the evidence is left with the definite and firm conviction that a mistake has been committed." *Walker v. Braus*, 995 F.2d 77, 80 (5th Cir. 1993). The district court's findings need only be "plausible in light of the record viewed in its entirety" to survive review. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

## A.    Contributory Negligence

### 1.    The District Court's Findings

The district court assigned 75% of the fault to Pallis and 25% to the United States. The district court found that the only negligence leading to Pallis's injury consisted of "miscommunications" attributable to both Pallis and the United States.

To support its finding, the district court interpreted Pallis's request for assistance and for mechanical support as requests for general assistance, rather than a request for help moving an object that Pallis believed he could not carry safely. Based on the response he received, Pallis did not believe that any help was available to him, and he did not ask for help with the steel plate that caused his injury. The district court found that because Pallis elected to move the object that caused his injury, rather than moving lighter items until assistance became available, he contributed to his injury. The district court also noted that Pallis could have used available chainfalls, but chose not to do so.

The district court found that Pallis's requests for assistance, although "vague," were sufficient to put Pallis's supervisor on notice of the heavy objects

4

within Pallis's work assignment. The district court therefore found that the United States was contributorily negligent for Pallis's failure to use chainfalls.

The district court's apportionment of liability implies that Pallis bore the great measure of fault because he failed to wait for human assistance and chose not to use mechanical aid. Although it is unclear from the district court's findings whether the decision not to wait or use mechanical aid stemmed from the negligent miscommunication, the record shows testimony on "stop-work authority," which places the burden on an employee to recognize when a task exceeds his abilities and requires him to either stop and wait for assistance or use mechanical help. The parties contested whether stop-work authority was a recognized maritime doctrine, and the district court did not specifically point to this concept in its apportionment of liability. The district court did, however, use its implications to support its findings.

2.    Whether the Record Supports the District Court's Findings

The district court's negligence finding implies that Pallis was liable for assuming that neither human nor mechanical means were available or practical, and therefore his decision to lift the steel plate was primarily attributable to his own negligence. The district court purported to base its finding of negligence on the communication between Pallis and his supervisor. On appeal, Pallis attempts to shift the inquiry to whether the shipowner violated its duty to provide him with a reasonably safe place to work after assigning him to move the trash.

Pallis claims that a seaman has no obligation to find the safest manner of performing an assigned task, citing *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 223 (5th Cir. 1975), *clarified by* 546 F.2d 675 (5th Cir. 1977). *Spinks*, however, does not guide our analysis because it was overruled by *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997) (en banc). In *Gautreaux*, a unanimous *en banc* panel held that the reasonable person standard in Jones Act negligence

No. 09-40088

cases is that "of the reasonable *seaman* in like circumstances." *Id.* at 339. Pallis's argument does not acknowledge the *Gautreaux* standard. Although a seaman may not be obligated to find the safest method of performance, *Gautreaux* holds that he has a duty to exercise the judgment and acumen of a seaman with like experience in like circumstances.

By his own admission, Pallis is a seaman of considerable experience. The district court found that Pallis, based on his own assumptions, elected to carry the plate that caused his injury without waiting for human or mechanical help. Pallis claims that the district court erred when it found him contributorily negligent because he was following orders to move the trash. Accepting his argument would make automatons of seamen and abrogate the holding of *Gautreaux*. The district court did not clearly err when it found that a seaman of like experience and training would have waited for human aid or used mechanical assistance.

To overcome the district court's finding that "miscommunication" caused his injury and his negligence was a contributing factor, Pallis must show that the district court's causation finding was implausible upon a view of the entire record. *Anderson*, 470 U.S. at 574. Pallis cannot make this showing and his efforts to shift the inquiry on the standard of care are unavailing. The district court's interpretation of the record is not implausible. The record shows that Pallis was an experienced seaman, assigned the task of transporting objects of different sizes and weights. He requested assistance—in a general manner—to complete the task, and then chose to carry a heavy object without waiting for human assistance or using mechanical aid. The record supports the district court's findings on causation. The district court did not commit clear error when it found Pallis 75% contributorily negligent for his injuries.

## B.    Seaworthiness

Seaworthiness is a doctrine unique to admiralty. An unseaworthy boat

6

will not necessarily sink when set in the water; an injured seaman need only "prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." *Jackson*, 245 F.3d at 527 (citing *Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206 (1963); *Bowner v. Lloyd Brasilerio S.S. Co.*, 417 F.2d 779 (5th Cir. 1969)).  The complaining seaman must also establish a "causal connection" between the injury and the claimed unseaworthy condition.  *Id.* (citing *Caldwell v. Manhattan Tankers Corp.*, 618 F.2d 361, 363 (5th Cir. 1980)).

The district court stated that a vessel is seaworthy if it is "reasonably fit for its intended purpose."  *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960).  The district court, citing *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 817 (5th Cir. 1988), also noted that unseaworthiness must involve a defective condition, not an isolated negligent act or omission. The district court found that the *M/V Cape Flattery* was in an activation period, during which its intended purpose was to prepare for active duty.  The district court then concluded that Pallis had not adequately established a defective condition onboard the *M/V Cape Flattery* that rendered it not reasonably fit for its intended purpose.  The district court acknowledged that the physical conditions on the vessel were not ideal, but found that the imperfect conditions did not present an unreasonable risk of injury.

On appeal, Pallis argues that the district court failed to follow our governing law of seaworthiness because it did not make any findings on his theory that his supervisors provided too few crew members to safely complete his assigned task.  Pallis directs us to the Fifth Circuit Pattern Jury Instructions–Civil, § 4.5, which states that: "if too few persons are assigned to a given task [or] . . . if the owner of the vessel did not provide an adequate crew of sufficient man power to perform the task required . . . and this was a proximate cause of the injury, then the vessel was unseaworthy."  Pallis also

No. 09-40088

cites cases which hold that if assigning too few seamen to perform heavy lifting results in injury, the question of seaworthiness may be presented to a jury. *See Waldron v. Moore-McCormack Lines, Inc.*, 386 U.S. 724, 728 (1967) (holding that a party should be allowed to present a theory of unseaworthiness based on inadequate crew to a jury).

Pallis's argument fails because the district court's findings of fact on the matter of unseaworthiness satisfy clear error review when combined with the district court's negligence findings and apportionment of liability. We have found that even if the trial court makes "no separate finding of proximate cause," it may be "implicit in the trial court's negligence finding and apportioning of liability." *In re Luhr Bros., Inc.*, 325 F.3d 681, 685 (5th Cir. 2003) (citing *McLennan v. Am. Eurocopter Corp., Inc.*, 245 F.3d 403, 433 n.28 (5th Cir. 2001); *Brooks v. United States*, 757 F.2d 734, 737 (5th Cir. 1985)).

The district court found that Pallis's injury was the result of miscommunication; it is implicit in this finding that the number of crew on board the *M/V Cape Flattery* did not proximately cause Pallis's injury. The district court also found that Pallis should have waited for additional human assistance, implying the availability of other assistance. The district court then ascribed 75% of the blame for the injury to Pallis, noting his failure to wait for assistance from other crew members or use mechanical aid.

Although the district court did not explicitly state that Pallis failed to meet his burden of establishing that understaffing proximately caused his injury, it is implicit in the district court's finding that miscommunication caused Pallis's injury. Pallis presented his unseaworthiness theory at trial, and it may be implied from the district court's findings on negligence that Pallis did not carry his burden of establishing that the claimed unseaworthiness resulted in his injury. *Jackson*, 245 F.3d at 527. The district court did not commit clear error when it denied Pallis's unseaworthiness claim.

No. 09-40088

## C.    Advancement

Under the Jones Act, an injured seaman may recover damages for loss of earnings capacity, future lost earnings, medical expenses, and pain and suffering resulting from his injury. *See* 46 U.S.C. § 30104. The court determines future lost earnings with the assistance of expert testimony, taking into account the injured seaman's current compensation and future variables such as inflation and invested rate of return. *See, e.g.*, *Williams v. Reading & Bates Drilling Co.*, 750 F.2d 487, 491–92 (5th Cir. 1985).

Pallis worked as a wiper at the time of his injury. The district court found that Pallis's lost wages between the date of his injury and the judgment totaled $99,148, reduced by $21,255 for wages Pallis earned from another employer during the same time. The district court also found that Pallis had a current earning capacity greater than his earning capacity at the time of his injury, noting testimony from Pallis's treating physician that Pallis could perform administrative and clerical work and testimony from a defense expert identifying a number of possible jobs fitting that description. Because his current earning capacity exceeded his earning capacity at the time of his injury, the district court found that Pallis failed to mitigate his damages and could not recover future lost wages. The district court refused to assign Pallis damages at a higher pay grade because the court found it too speculative to assume that Pallis would acquire the required number of days at sea and pass the written examinations necessary to advance.

Pallis argues that he is entitled to calculation of future lost wages at a higher level because he would have advanced from Group C to become a Qualified Member of the Engine Department, with its accompanying increased earning capacity. Pallis stated that he would eventually make the requisite forty additional days of sea time on the assignment that resulted in his injury. However, the district court also heard evidence casting doubt on the likelihood

that Pallis would accumulate this sea time.

The district court found Pallis's advancement argument too speculative. Viewing the record in its entirety, this finding is not implausible. We "should be wary of attempting to second guess the district court, which has the decided advantage of first hand experience concerning the testimony and evidence presented at trial." *Graham*, 824 F.2d at 388. There is evidence in the record that it took Pallis some time to catch his first ship, accompanied by testimony that acquiring the total amount of sea time necessary to advance can be difficult. The district court did not clearly err when it found that Pallis's assertion that he would accumulate the necessary sea time and successfully complete the required written exams was too speculative to craft a damage award at the higher pay grade.

## D.    Future Maintenance and Cure

Maintenance and cure are remedies uniquely available to injured seamen, with a "venerable history in the jurisprudence of admiralty." *Hall v. Noble Drilling (U.S.), Inc.*, 242 F.3d 582, 586 (5th Cir. 2001). Maintenance "entitles an injured seaman to food and lodging of the kind and quality he would have received aboard the ship," while cure "encompasses not only the obligation to reimburse medical expenses actually incurred, but also to ensure that the seaman receives the proper treatment and care." *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002) (citations omitted).

Courts have granted maintenance awards to injured seamen, like Pallis, who did not receive food or lodging during their employment. *Hall*, 242 F.3d at 587. Courts have long held that maintenance "extends beyond the end of the seaman's voyage to the time of maximum cure." *Id.* at 586. A seaman reaches maximum cure when "it is probable that further treatment will result in no betterment in the claimant's condition." *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996); *see also Lirette v. K&B Boat Rentals, Inc.*, 579 F.2d 968,

No. 09-40088

970 (5th Cir. 1978) (affirming a district court's grant of summary judgment to an injured seaman for claim of maintenance until maximum cure).

Pallis made his claim for maintenance and cure during the bench trial. The district court heard testimony from Pallis that he received maintenance of $8 per day between his injury and trial, as required by his union contract. The district court found that Pallis had a current earning capacity for performing light, clerical work, and combined this finding with its award of future medical expenses (for anticipated knee surgery), to conclude that Pallis could not recover future maintenance and cure.

Pallis argues on appeal that the district court clearly erred when it denied his maintenance claim because the district court awarded Pallis future medical expenses, and an award for future medical expenses necessarily implies that Pallis will require time for convalescence and maintenance should be awarded until "maximum cure." Pallis points to the Fifth Circuit Pattern Jury Instructions–Civil, § 4.11, and claims that he is entitled to future maintenance payments during his period of convalescence from future surgery.

In *Boudreaux*, a district court denied an injured seaman's motion for maintenance and cure because it had previously awarded future medical expenses. 280 F.3d at 469. We reversed because of the illogical nature of the district court's award:

> Given the court's determination that Boudreaux still needed therapy to improve his mental condition, it could not have concluded that he had reached maximum medical cure. . . . As the court found that further treatment would, in fact, improve Boudreaux's condition, it necessarily follows that he has not reached maximum medical cure.

*Id.* The *Boudreaux* court remanded for a determination of "maintenance in the amount [the district court] determines to be reasonable." *Id.*

*Boudreaux* guides our disposition. It is true, as the United States argues,

11

that a seaman may recover maintenance for "only such amounts as may be needful in the immediate future for the maintenance and cure of a kind and for a period which can be definitely ascertained." *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 531–32 (1938). When the district court found that Pallis would incur medical expenses for physical therapy and for a full knee replacement, however, it implied a definite period of time for the completion of that treatment. *Lirette*, 579 F.2d at 970 (rejecting a shipowner's argument that an award of maintenance until maximum cure was indefinite). We hold that the district court erred when it refused to award Pallis future maintenance.

Pallis failed to dispute the district court's denial of his request for cure. It is clear from *Boudreaux* that an award of future medical expenses is not duplicative of cure because the former sounds in tort while the latter is a contractual remedy. 280 F.3d at 469. However, because Pallis did not appeal the district court's denial of his cure claim, we do not address this matter on appeal.

### III. CONCLUSION

The district court did not clearly err when it found that "miscommunication" caused Pallis's injury and attributed 75% of the fault to Pallis's own conduct. Also, the district court did not clearly err when it failed to explicitly address Pallis's unseaworthiness argument, because it implied the proximate cause of Pallis's injury in its findings of negligence and apportionment of liability. Finally, the district court did not clearly err when it denied Pallis's claim for higher future lost wages, because its finding that advancement was too speculative is not implausible from a view of the entire record. We therefore affirm the district court's findings on negligence and its rejection of Pallis's unseaworthiness claim and claim to future lost wages.

However, the district clearly erred when it denied Pallis's claim for future maintenance, because the district court also awarded damages for future

No. 09-40088

medical expenses, implicitly finding that Pallis had not reached maximum cure. We reverse the district court's denial of future maintenance and remand for a determination of the amount to which Pallis is entitled.

AFFIRMED in part, REVERSED in part, and REMANDED.