# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 17, 2020

Lyle W. Cayce
Clerk

No. 19-30756

Andrew Lee Knight,

*Plaintiff—Appellant*,

*versus*

Kirby Offshore Marine Pacific, L.L.C.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CV-12456

Before Barksdale, Elrod, and Ho, *Circuit Judges*.

Rhesa Hawkins Barksdale, *Circuit Judge*:

Primarily at issue is whether, as a matter of law, Andrew Lee Knight can be held contributorily negligent for his ankle injury underlying his Jones Act negligence claim against Kirby Offshore Marine Pacific, L.L.C. (Kirby). The district court concluded, *inter alia*: Kirby was negligent, based on an order by its vessel's captain to replace the stern line in unfavorable weather; and Knight was contributorily negligent for placing the removed stern line near him and subsequently stepping on it while carrying out that order, reducing his damages award in proportion to his fault. AFFIRMED IN PART; VACATED IN PART; REMANDED.

I.

Knight was a seaman aboard the M/V SEA HAWK, a tugboat owned by Kirby that was then towing a barge from the State of Washington to Alaska.  As an offshore tankerman, Knight was responsible for, *inter alia*, all the deck labor:  loading and discharging cargo, assisting with repairs, and general heavy lifting for both vessels.

The SEA HAWK housed a stern line used when entering and exiting ports to secure the barge to the tug.  The line was more than 100-feet long and several inches thick.  At one point the line chafed.  Once the vessels were in the open sea and the stern line was no longer in use, the captain ordered Knight and another crewmember, Ladd, to change out the line.  When the order was given, four-foot seas and winds of at least 20 miles an hour caused the SEA HAWK to roll.

After Knight and Ladd removed the chafed line, they placed it on the deck next to them.  As they were installing the new line, Knight stepped on the chafed line and injured his ankle.  He testified that the rocking of the SEA HAWK caused him to lose his balance.  As discussed *infra*, Knight's injury prevents his returning to work in the same capacity.

Following the accident, Knight filed, *inter alia*, this Jones Act negligence claim under 46 U.S.C. § 30104 *et seq*.  Following a two-day bench trial, the court concluded:  Kirby was negligent because "there were safer times to issue the order to change the line"; and Knight was contributorily negligent because he failed to "watch his footing while replacing the chafed stern line" and failed to "move the chafed stern line to a location on the boat where he would not have stepped on it".  The court assigned equal fault to each party.

For Knight's injury, the court awarded, *inter alia*, $60,000 for past-and-future general damages for pain and suffering, based on Knight's

No. 19-30756

continued complaints of pain and his doctor's finding he had suffered, *inter alia*, a 10% lower-extremity impairment. His total damages of approximately $344,000 were reduced proportionate to his assignment of 50% fault.

In denying Knight's Federal Rule of Civil Procedure 59(e) post-trial motion to alter or amend judgment, the court rejected: Knight's contention that, as a matter of law, a seaman may not be held contributorily negligent for carrying out an order; his challenge that Ladd must be equally at fault for the placement of the stern line; and his claim that the award of $60,000 in general damages was manifestly unjust.

## II.

Knight maintains: the court erred, as a matter of law, by concluding he was contributorily negligent, even though he was following an order at the time of his injury; and, in the alternative, it clearly erred in finding him contributorily negligent. Knight also contends the court clearly erred in awarding him only $60,000 in general damages.

## A.

We first consider whether, as a matter of law, a seaman may be held contributorily negligent when he is complying with an order from his superior. If he can, we turn to the district court's finding Knight 50% at fault.

### 1.

The district court's legal conclusions are reviewed *de novo*. *E.g.*, *Becker v. Tidewater, Inc.*, 586 F.3d 358, 365 (5th Cir. 2009). In challenging the application of contributory negligence, Knight primarily relies on *Williams v. Brasea, Inc.*, 497 F.2d 67 (5th Cir. 1974), in which this court stated in *dictum*, "a seaman may not be contributorily negligent for carrying out orders that result in his own injury, even if he recognizes possible danger", *id.* at 73. Knight asserts this principle was reiterated and affirmed in an

unpublished opinion in *Ledet v. Smith Marine Towing Corp.*, 455 F. App'x 417 (5th Cir. 2011). Accordingly, Knight maintains that, as a matter of law, he cannot be held negligent because he was following his captain's order.

In its denial of Knight's Rule 59(e) post-trial motion, the district court correctly noted that Knight failed, before entry of judgment, to raise his challenge to the application of contributory negligence. *See Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) ("[Rule 59(e) motions] cannot be used to raise arguments which could, and should, have been made before the judgment issued. . . . [T]hey cannot be used to argue a case under a new legal theory") (citation omitted). Further, as previously stated, the proposition urged by Knight is *dictum* in *Williams*; we lack any binding precedent applying *Williams* to deny application of contributory negligence. In any event, Knight's contention fails.

The above-described *dictum* in *Williams* undeniably modifies the rule in Jones Act negligence claims that "contributory negligence is an affirmative defense that diminishes recovery in proportion to the seaman's fault". *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 302 (5th Cir. 2008); 45 U.S.C. § 53 (mandating contributory negligence under the Federal Employees Liability Act (FELA)), 46 U.S.C. § 30104 (incorporating FELA into the Jones Act). In *Williams*, a supervisor was untangling a line caught on a winch when he allegedly ordered his crewman to turn on the power, trapping the supervisor's hands and causing significant injury. *Williams*, 497 F.2d at 71. Our court held: if the order was in fact given, the crewman could not be found contributorily negligent for failing to ensure the supervisor was free from danger before following the command. *Id.* at 73. More pertinent to this appeal, *Williams* stated in *dictum*: a seaman cannot be held contributorily negligent for following an order that results in *his own* injury. *Id.* (citation omitted).

Judges Ho and Elrod in their concurring and dissenting opinions, respectively, do not agree that the above statement in *Williams* about a seaman's own injury is *dictum*. As discussed, the issue in *Williams* was a supervisor's, not a seaman's, injury. Accordingly, the statement in *Williams* concerning an injury to a seaman was unnecessary for deciding the issue before the court: the supervisor's injury. Therefore, the statement about the seaman is *dictum* and, concomitantly, not binding precedent. *E.g., United States v. Segura*, 747 F.3d 323, 328–29 (5th Cir. 2014) ("A statement is dictum if it could have been deleted without seriously impairing the analytical foundations of the holding and[,] being peripheral, may not have received the full and careful consideration of the court that uttered it. A statement is not dictum if it is necessary to the result or constitutes an explication of the governing rules of law. If a statement is dictum, we are free to disregard it from prior panel opinions when we find it unpersuasive.") (cleaned up); *United States v. Rubin*, 609 F.2d 51, 69 n.2 (2d Cir. 1979), *aff'd*, 449 U.S. 424 (1981) (Friendly, J., concurring) ("A judge's power to bind is limited to the issue that is before him; he cannot transmute dictum into decision by waving a wand and uttering the word 'hold[ing]'.").

The *dictum* in *Williams*, or a similar limit on contributory negligence, has been applied in other jurisdictions. The ninth circuit adopted a categorical interpretation of *Williams*, applying the bar on contributory negligence to all orders from a captain. *See Simeonoff v. Hiner*, 249 F.3d 883, 890 (9th Cir. 2001) (declaring *Williams* "persuasive, fair to crew and vessel owners alike" because "[c]ompliance with orders from supervisors will promote vessel safety and will aid efficacy of command at sea"). Other courts, by comparison, apply *Williams* only to a supervisor's *specific orders*, allowing contributory negligence when there was a *general order*. *See Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 167 (Tex. 2012) (holding the rule in *Williams* applies solely "when the seaman is ordered to do a specific task in

a specific manner or is ordered to do a task that can be accomplished in only one way"). Notably, but with no mention of *Williams*, both the third and eighth circuits rely on the same distinction between general and specific orders when considering contributory negligence under FELA, which, as noted *supra*, is incorporated by the Jones Act. *See Fashauer v. New Jersey Transit Rail Operations, Inc.*, 57 F.3d 1269, 1279 (3d Cir. 1995) ("when the employee is given a specific order—that is, where he or she is told to perform a specific task in a particular way—he is not contributorily negligent") (internal quotation marks and citation omitted); *Alholm v. Am. Steamship Co.*, 144 F.3d 1172, 1179 (8th Cir. 1998) ("A seaman cannot be found comparatively negligent [] when following an order to complete a task in a specific manner.").

Our court's analysis of Jones Act negligence claims tracks the distinction between general and specific orders. In *Boudreaux v. United States*, 280 F.3d 461 (5th Cir. 2002), a supervisor ordered a seaman to perform two jobs but "did not specifically instruct [plaintiff] on the order of these tasks", *id.* at 464. While the seaman and a fellow crewmember were performing one of the tasks (involving transporting a 300-pound valve), one of the seamen slipped on piping they had previously exposed, injuring plaintiff. *Id.* at 464–65. Our court upheld the attribution of 50% fault to both seamen. *Id.* at 467.

Similarly, in *Pallis v. United States*, 369 F. App'x 538 (5th Cir. 2010), our court upheld the assignment of 75% fault to a seaman when he was ordered to move trash and elected to carry the heavier objects without any help, *id.* at 540, 546. In reducing the seaman's award proportional to his fault, we explained that a rule barring contributory negligence for all orders would make "automatons of seamen" and abrogate the principle that a seaman must perform his tasks with ordinary prudence. *Id.* at 542.

This principle—seamen must act with ordinary prudence under the circumstances—was affirmed by our court in *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997) (en banc). There, we observed that prior fifth circuit cases had "vacillated" in their pronunciations of the proper standard of care for seamen in Jones Act negligence claims, describing the duty as either "slight care", "ordinary prudence", or both. *Id.* at 337–38. After extensive review, we held a seaman owes more than a "slight duty" to look after his own safety. *Id.* at 339. Rather, a seaman is obligated to act "with ordinary prudence under the circumstances" because "nothing in the text or structure of the FELA–Jones Act legislation suggests that the standard of care to be attributed to either an employer or an employee is anything different than ordinary prudence". *Id.* at 338–39.

On the other hand, in the earlier-referenced opinion for *Ledet*, after the captain ordered a seaman to perform a highly specific task (tying a pendant wire to a norman pin at a designated time), the seaman was injured. *Ledet*, 455 F. App'x at 420. Although plaintiff was not found negligent, our court observed that, even if he were, *Williams* would foreclose any reduction of the award. *Id.* at 422. Unlike in the cases discussed *supra* (*Boudreaux*, *Pallis*, and *Gautreaux*), we referenced *Williams* and expressly stated that it remains applicable.

Of course, because *Pallis* and *Ledet* are unpublished, they are not precedential; but, their reasoning can be persuasive. *See* 5th Cir. R. 47.5.4; *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (recognizing unpublished opinions issued after 1 January 1996 are not controlling precedent but may be considered persuasive authority).

This survey of our case law shows the *dictum* in *Williams*, at most, stands for the proposition that a seaman may not be found contributorily negligent for carrying out a specific order from his superior that results in the

seaman's injury.  A specific order is one that must be accomplished using a specific manner and method and leaving the seaman with no reasonable alternative to complete the assigned task.  *See Alholm*, 144 F.3d at 1179; *Fashauer*, 57 F.3d at 1278; *see also Simeonoff*, 249 F.3d at 891 n.4 (applying *Williams* categorically while noting, "[w]hen a seaman completes an ordinary task at sea, even if requested by a superior, contributory negligence may mitigate damages if an injured seaman had alternatives available, and chose the unreasonable course in completing that task").  Such a rule accepts the earlier-referenced importance of a superior's efficacious command at sea while avoiding awarding unreasonable conduct.  *See Gautreaux*, 107 F.3d at 339.

The order given Knight and Ladd was a general order and, therefore, does not trigger the *Williams*' *dictum*.  As in *Boudreaux*, the order was simply to change out equipment on the vessel—no additional instructions or specifications were provided.  *See Boudreaux*, 280 F.3d at 464 (reducing seaman's award of damages in proportion to his fault when he was ordered to, *inter alia*, replace a valve).  Changing out the chafed line fell within the class of ordinary "heavy lifting" Knight performed routinely.  Therefore, the district court was not precluded, as a matter of law, from reducing his award proportional to his fault.

2.

Accordingly, we address the contributory-negligence finding; findings of fact are reviewed for clear error.  *E.g.*, *Becker*, 586 F.3d at 365.  A finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made.  *E.g.*, *Jackson v. OMI Corp.*, 245 F.3d 525, 528 (5th Cir. 2001).

Knight contends the district court clearly erred in finding him 50% at fault.  It did not clearly err in finding Knight was negligent in stepping on the

chafed line, but it did in finding him negligent for failing to move it. (Knight's claim that Ladd must be equally at fault for Knight's injuries was not raised until Knight's above-discussed post-trial motion and was properly denied. Obviously, this should have been raised before trial. Fed. R. Civ. P. 59(e); *Boudreaux*, 280 F.3d at 467 n.3.)

Again, the standard of care for a seaman under the Jones Act is that of an ordinarily prudent seaman under like circumstances. *Gautreaux*, 107 F.3d at 339. Regarding the court's first finding of negligence, Knight had the duty to watch where he stepped. The record shows he was an experienced tankerman, was trained to change the line safely, had experience with rolling vessels, and knew the chafed line was on the deck while he was preparing to load the new one. As stated *supra*, the court did not clearly err in imputing negligence to Knight for stepping on the line.

The court's second negligence finding, pertaining to the placement of the chafed line on the deck, lacks any record evidence. Knight testified he stepped on the line after it was taken off the winch but before the new one was installed. Ladd, who was working with Knight, testified that placing the chafed line to the side was the standard operating procedure. Commonsensically, a seaman should not place obstacles near his working area. But Kirby does not present any evidence showing Knight placed the chafed line on the deck in an imprudent manner. Moreover, the SEA HAWK's captain, who gave the order to Knight and Ladd, watched the entire procedure and testified there were no irregularities in how they performed their task. He further explained they did not haphazardly throw the chafed line on the deck.

In the absence of any evidence, the court's finding of 50% negligence on the basis, in part, of Knight's placement of the chafed stern line is clearly erroneous. *See Boudreaux*, 280 F.3d at 467 (finding seaman 50% negligent for

stepping on piping he had previously exposed because he, *inter alia*, conceded there was a safer procedure).

### B.

A court's damages award is a finding of fact reviewed for clear error. *Barto v. Shore Constr., L.L.C.*, 801 F.3d 465, 473 (5th Cir. 2015).  As such, the award is not clearly erroneous if it is plausible in the light of the record. *Comar Marine, Corp. v. Raider Marine Logistics, L.L.C.*, 792 F.3d 564, 574 (5th Cir. 2015).  General damages are available for pain and suffering and their negative impact on one's normal life routines. *Barto*, 801 F.3d at 473.  "Any amount to be awarded for pain and suffering must necessarily depend to a great extent on the trial court's observation of . . . plaintiff and its subjective determination of the amount needed to achieve full compensation." *Hyde v. Chevron U.S.A., Inc.*, 697 F.2d 614, 632 (5th Cir. 1983).

As mentioned above, the court denied Knight's contention in his post-trial motion that the general damages award of $60,000 was manifestly unjust.  The court observed that there are factually analogous cases where courts awarded lower or similar damages for plaintiffs with comparable disabilities.  Accordingly, the court reasoned, Knight's insistence that his award was unjust failed.  We agree.

Neither party disputes the court's factual findings regarding Knight's injuries or recovery.  Knight underwent three reconstructive surgeries on his ankle and attended approximately 100 physical-therapy sessions.  His orthopedic surgeon assigned him a 14% foot-and-ankle impairment, 10% lower-extremity impairment, and 4% whole-person impairment.  Knight cannot return as an offshore tankerman, but he can work as a shore tankerman (a position requiring less strenuous activity).

Knight maintains the court's findings support an award greater than $60,000 in general damages.  In addition to a Louisiana federal-court case,

he relies heavily on analogous Louisiana state-court cases.  In that regard, our court looks to relevant federal and state cases within the district court's jurisdiction in determining whether damages were excessive.  *See Moore v. M/V ANGELA*, 353 F.3d 376, 385 (5th Cir. 2003) (holding award was excessive because of, *inter alia*, factually similar Louisiana appellate-court decisions); *Lebron v. United States*, 279 F.3d 321, 326 (5th Cir. 2002) ("we will decline to reduce damages where the amount awarded is not disproportionate to at least one factually similar case from the relevant jurisdiction") (internal quotations and citation omitted).  We see no reason for not applying a similar standard in assessing whether damages were inadequate.  *See, e.g.*, *Dominique v. Georgia Gulf Corp.*, No. 96-30418, 1996 WL 670315, at *3 (5th Cir. Nov. 7, 1996) (acknowledging "factually similar cases in Louisiana" and holding damages award was not inadequate).

Knight compares his injury to that in *Wynne v. Trotter*, 46 So. 3d 678 (La. Ct. App. 2010).  There, plaintiff suffered a fracture in his right heel, causing a 12% foot-and-leg impairment.  *Id.* at 685.  Plaintiff developed a permanent limp, lost his ability to run and stand for extended periods of time, and did not undergo surgery to repair the injury.  *Id.*  The court upheld an award of $185,000.  *Id.* at 685–86.  The present-day value of the award, according to Knight, is roughly $217,000.  *See Ledet*, 455 F. App'x at 423 (calculating present-day value of prior award using Bureau of Labor Statistics' CPI Inflation Calculator, *available* at *http://data.bls.gov/cgi-bin/cpicalc.pl*).

Knight also cites *Baham v. Nabors Drilling USA, LP*, 721 F. Supp. 2d 499 (W.D. La. 2010): plaintiff fractured his ankle, precipitating surgery and the insertion of two screws, *id.* at 516.  Plaintiff suffered a 35% foot-and-ankle impairment, 25% lower-extremity impairment, and 10% whole-person impairment. *Id.* at 517.  The court awarded $250,000 in general damages. *Id.* at 520.

Although Knight insists *Wynne* and *Baham* necessitate a greater award, other Louisiana state-court cases with comparable injuries affirm amounts similar to Knight's. In *Seymour v. Cigna Ins. Co.*, 622 So. 2d 839 (La. Ct. App. 1993), plaintiff fractured his ankle, underwent two surgeries, received monthly treatment from his orthopedic surgeon for four years, and required injections of anesthesia into his sympathetic nervous system. *Id.* at 844. The court upheld $35,000 in general damages, *id.*, the equivalent of $63,000 today (conversion done using earlier-referenced CPI Inflation Calculator).

Relatedly, in *Broussard v. Oak Trace Apartments*, 69 So. 3d 1257 (La. Ct. App. 2011), plaintiff sustained a broken ankle, underwent surgery, and testified "she [was] no longer able to do things she used to do", including basic activities like walking on a treadmill. *Id.* at 1262–63. The court upheld a $50,000 award. *Id.* at 1263. And in *Laborde v. St. James Place Apartments*, 928 So. 2d 643 (La. Ct. App. 2006), plaintiff suffered a sprained ankle and underwent surgery, *id.* at 646. She was diagnosed with a 5% total-body disability and attended two months of physical therapy. *Id.* The court upheld an award of $20,000. *Id.* at 648.

Granted that prior general-damage awards are not always controlling, our clearly-erroneous standard of review and the range of awards in factually analogous cases preclude reversing the award of $60,000. *See Lebron*, 279 F.3d at 326. While it may be lower on the scale of adequate amounts, it is not outside the bounds of plausibility to constitute clear error.

## III.

For the foregoing reasons, the judgment is AFFIRMED IN PART and VACATED IN PART; this matter is REMANDED for the district court, consistent with this opinion, to find the percentage of contributory

negligence based solely on Knight's stepping on the line and, concomitantly, to decide his total damages award.

JAMES C. HO, *Circuit Judge*, concurring:

I join parts I, II.A.2, II.B, and III of the majority opinion. As for part II.A.1, I agree that our decision in *Williams v. Brasea*, 497 F.2d 67 (5th Cir. 1974), does not control the outcome of this case. *Williams* states that "a seaman may not be contributorily negligent for carrying out orders that result in his own injury, even if he recognizes possible danger." *Id.* at 73. Judge Barksdale dismisses this statement as mere *dicta* (because *Williams* involved a supervisor rather than a seaman), while Judge Elrod regards this statement as essential to the *ratio decidendi* of our decision. But we surely all agree that "[a] court [may] distinguish[] a precedent by discerning material differences between it and the present dispute." BRYAN A. GARNER ET AL., THE LAW OF JUDICIAL PRECEDENT 97 (2016). After all, "'[i]t is common to see a later narrowing of a [holding] that, in the heat of the moment and of the argument, was too broadly phrased. The original judge, later courts will say, did not have the other possible sorts of cases in mind.'" *Id.* at 98 (quoting KARL LLEWELLYN, THE CASE LAW SYSTEM IN AMERICA 15 (Paul Gewirtz ed., 1989)). That is precisely the approach we are taking here. "*Williams*, at most, stands for the proposition that a seaman may not be found contributorily negligent for carrying out a *specific order* from his superior that results in the seaman's injury." *Ante*, at 8 (emphasis added). *See generally ante*, at 5–7 (collecting cases distinguishing between general and specific orders). And the order given to Knight and Ladd was a general order, not a specific one. So *Williams* is distinguishable from this case. Accordingly, I agree that the district court was not precluded from finding Knight contributorily negligent.

No. 19-30756

Jennifer Walker Elrod, *Circuit Judge*, dissenting:

Andrew Knight suffered a severe injury aboard the *M/V Sea Hawk*. He argues that the district court erred, as a matter of law, by holding him contributorily negligent even though he was following orders at the time of his injury. Because our binding and longstanding precedent under the rule of orderliness precludes a finding of contributory negligence, I dissent.

I.

Under our precedent in *Williams v. Brasea, Inc.*, 497 F.2d 67 (5th Cir. 1974), we should hold that the district court erred by holding Knight contributorily negligent. In *Williams*, we stated that "a seaman may not be contributorily negligent for carrying out orders that result in his own injury, even if he recognizes possible danger." *Id.* at 73. In this case, it is undisputed that Knight was following orders at the time of his injury. Therefore, the district court erred by holding him contributorily negligent—plain and simple.

The majority does not alter *Williams*'s binding effect. Although one member of the panel would declare our longstanding rule in *Williams* dictum, the majority of this panel holds that it is not. *Williams* remains the law of this circuit.

Indeed, we reaffirmed the *Williams* rule in *Ledet v. Smith Marine Towing Corp.*, 455 F. App'x 417 (5th Cir. 2011). In *Ledet*, the vessel owner argued that the seaman was contributorily negligent while attempting to comply with the captain's orders. *Id.* at 422. We concluded, however, that "[b]ecause the district court found that Ledet was following orders, Smith

15

Marine's argument about Ledet's own negligence is foreclosed by *Williams*." *Id.* [1]

The majority concludes that Knight's circumstances do not fall under *Williams*—reasoning that *Williams* can be distinguished because it dealt with a "specific" rather than "general" order and that Knight was given a general order. However, this reasoning fails in two ways.

First, we have never before read *Williams* as a case that only deals with "specific orders." Nor did the Ninth Circuit when they adopted the *Williams* rule. *See Simeonoff v. Hiner*, 249 F.3d 883, 890 (9th Cir. 2001) (adopting *Williams*'s rule and rejecting the specific-order distinction on the ground that it "fails to consider the effect of even a general order on a seaman" and that compliance with all orders from supervisors "will promote vessel safety and will aid efficacy of command at sea.").[2]

Second, while I reject the contention that *Williams* contained a general-and-specific-order distinction, even if we applied such a distinction in this case, *Williams* would still require holding that Knight was not contributorily negligent. Knight was given a specific order—he was ordered to perform a specific task at a specific time. That order was to change out the

---

[1] The post-*Williams* cases Judge Barksdale relies on in Part II.A.1 of the opinion do not mention or modify *Williams*. *See Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 333–39 (5th Cir. 1997) (*en banc*) (discussing negligence standard generally in a situation that did not involve following orders); *Boudreaux v. United States*, 280 F.3d 461, 466–74 (5th Cir. 2002) (assuming that the seaman following orders could be held contributorily negligent and analyzing whether the district court's distribution of fault was correct, not whether any fault should have been assigned to the seaman in the first place); *Pallis v. United States*, 369 F. App'x 538, 541–42 (5th Cir. 2010) (same).

[2] Some other circuits have crafted a narrower rule. *See Alholm v. Am. S.S. Co.*, 144 F.3d 1172, 1179 (8th Cir. 1998); *Burden v. Evansville Materials, Inc.*, 840 F.2d 343, 346 (6th Cir. 1988). We are bound by ours, which does not make a distinction between "general" and "specific" orders.

No. 19-30756

stern line at a time when four-foot seas and winds of at least twenty miles an hour were causing the vessel to rock. He was then injured after stepping on the chafed line, which he testified was due to the rocking of the vessel. Knight followed his captain's order—exhibiting a compliance which "promote[s] vessel safety and . . . aid[s] efficacy of command at sea." *Simeonoff*, 249 F.3d at 890.

Simply put, following our longstanding precedent in *Williams*, I would hold that the district court erred by finding Knight contributorily negligent even though he sustained his injury while following orders.[3]

## II.

Knight also contends that the district court clearly erred by awarding him only $60,000 in general damages, despite the multiple surgeries, lengthy physical therapy, and permanent impairment, which caused him to no longer be able to work on a vessel. I would reverse the district court judgment on this ground as well.

General damages are available "for pain and suffering and impact on one's normal life routines." *Barto v. Shore Constr., L.L.C.*, 801 F.3d 465, 473 (5th Cir. 2015) (quoting *Crador v. La. Dep't of Highways*, 625 F.2d 1227, 1230 (5th Cir. 1980)). As a result of his injury, Knight needed to undergo three reconstructive surgeries (which included the insertion of screws) and to attend approximately 100 physical therapy sessions. His doctor assigned him 14% foot-and-ankle impairment, 10% lower-extremity impairment, and 4% whole-person impairment. Examining the undisputed extent of Knight's injuries and impairment, the district court found $60,000 a sufficient

---

[3] Because of this conclusion, I would not reach the issue of whether the district court erred in finding he acted negligently based on the facts in this case.

amount.  However, factually analogous cases in both the Louisiana federal and state courts support a greater award.

In *Wynne v. Trotter*, 10-90 (La. App. 4 Cir. 6/30/10), 46 So.3d 678, 681, 685, for example, the plaintiff suffered a fracture in his right heel, causing a 12% leg-and-foot impairment.  The plaintiff developed a permanent limp and lost his ability to run and stand for extended periods of time. *Id.* at 685.  There was no indication that the plaintiff underwent surgery to repair the injury.  *Id.*  The court upheld an award of $185,000.[4]  *Id.*

In another case, *Baham v. Nabors Drilling USA, LP*, 721 F. Supp. 2d 499, 516 (W.D. La. 2010), *aff'd*, 449 F. App'x 334 (5th Cir. 2011), the plaintiff fractured his ankle, precipitating surgery and the insertion of two screws.  The court awarded $250,000 in general damages.[5]  *Id.* at 520.

In its order denying Knight's motion to alter or amend the judgment, the district court distinguished *Wynne* on the ground that the plaintiff there suffered a fracture, whereas Knight merely "rolled his ankle."  The court's description does not seem to capture an injury that entailed multiple surgeries and the insertion of screws.  Whatever label is used, Knight's injury was severe enough to require him to undergo three surgeries and attend over a hundred physical therapy classes.

Furthermore, the cases relied upon by the district court in denying Knight's motion are not analogous.  In the first, *Broussard v. Oak Trace Apartments*, 11-125 (La. App. 3 Cir. 7/13/11), 69 So.3d 1257, 1262–63, the plaintiff sustained a broken ankle, had to have surgery, and testified that "she

---

[4] The present-day value of the award, according to Knight, is roughly $217,000. *See Ledet*, 455 F. App'x at 423 (calculating the present-day value of a prior award using the Bureau of Labor Statistics's CPI Inflation Calculator).

[5] This is the equivalent of $298,000 today, using the CPI Inflation Calculator.

No. 19-30756

is no longer able to do things she used to do." However, she was also in a car accident unrelated to the lawsuit that aggravated her ankle injury. *Id.* at 1259. The court upheld a $50,000 award.[6] *Id.* at 1263. In the other case, *LaBorde v. St. James Place Apartments*, 2005-0007 (La. App. 1 Cir. 2/15/06), 928 So.2d 643, 646, the plaintiff suffered a sprained ankle and underwent surgery. She was diagnosed with a 5% post-surgery disability and attended weeks of physical therapy. *Id.* The court upheld a general damages award of $20,000.[7] *Id.* at 648. Knight's injuries are much more severe.

The majority opinion also relies on *Seymour v. Cigna Ins. Co.*, 93-229 (La. App. 5 Cir. 1993), 622 So.2d 839, *writ denied*, 629 So.2d 1136 (La. 1993), which the district court did not cite. In that case, the plaintiff fractured his ankle, underwent two surgeries, required monthly treatment from his orthopedic surgeon for four years, and required injections of anesthesia into his sympathetic nervous system. *Id.* at 844. However, an orthopedic surgeon who examined the plaintiff determined that he did not walk with a limp, and the plaintiff testified that although he had to give up some sports activities like roller skating, he still walked, drove, and took care of his young children. *Id.* There, the court upheld an award of $35,000.[8] *Id.*

On the spectrum between *LaBorde/Broussard* and *Wynne/Baham*, *Seymour* is closer to *Broussard/LaBorde*. These cases involved fewer surgeries and less impairment on the plaintiff's ability to perform his or her line of work.

While the "clear error" standard is high, it is not insurmountable. *See Graham v. Milky Way Barge, Inc.*, 824 F.2d 376, 389–90 (5th Cir. 1987)

---

[6] This is the equivalent of $57,000 today, using the CPI Inflation Calculator.

[7] This is the equivalent of $26,000 today, using the CPI Inflation Calculator.

[8] This is the equivalent of $63,000 today, using the CPI Inflation Calculator.

(holding that district court erred in awarding inadequate damages). I would hold that the district court clearly erred in assessing a general damages award of only $60,000.

\*      \*      \*

In this case, I would conclude that the district court erred twice: once by ignoring our binding and longstanding precedent in *Williams* that seamen who are injured while following orders cannot be held contributorily negligent and again by awarding insufficient damages. I respectfully dissent.